In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-2441

JUAN RAUL GARZA,

*Petitioner-Appellant,*

*v.*

HARLEY G. LAPPIN, WARDEN,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. TH 01-95-C-M/F—**Larry J. McKinney,** *Judge.*

SUBMITTED JUNE 8, 2001 — DECIDED JUNE 14, 2001*

Before COFFEY, MANION, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Juan Raul Garza is scheduled to be executed by the federal government on June 19, 2001. Garza was convicted in the U.S. District Court for the Southern District of Texas for five violations of federal drug trafficking laws, operating a continuing criminal enterprise, money laundering, and – most pertinent here – three counts of killing in furtherance of a continuing criminal enterprise, in violation of 21 U.S.C. § 848(e). A jury recommended that he be

---

*This opinion is being released in typescript. A printed version will follow.

sentenced to death on each of the three § 848(e) violations, and the district court accepted that recommendation. Garza's conviction and sentence were affirmed on direct appeal to the Fifth Circuit, *United States v. Flores and Garza*, 63 F.3d 1342 (5th Cir. 1995), and his petition for writ of certiorari to the United States Supreme Court was denied, *Garza v. United States*, 519 U.S. 825 (1996). Garza then filed a motion to vacate his sentence under 28 U.S.C. § 2255, the federal prisoner's substitute for a petition for habeas corpus, arguing, among other things, that the introduction at the sentencing phase of his trial of evidence of five uncharged murders he allegedly committed in Mexico violated his constitutional rights. The trial court denied the motion, the Fifth Circuit denied his request for a certificate of appealability, *United States v. Garza*, 165 F.3d 312 (5th Cir. 1999), and the Supreme Court again denied certiorari, *Garza v. United States*, 528 U.S. 1006 (1999).

His avenues for domestic relief thus exhausted, Garza filed a petition with the Inter-American Commission on Human Rights ("the Commission"), an organization formed under the auspices of the Organization of American States. He could not have done so at any earlier time, as the Commission requires exhaustion of national remedies before a party may resort to it. Before the Commission, Garza again argued (among other things) that the introduction of the evidence of the Mexican murders violated his rights as set out in the American Declaration of the Rights and Duties of Man. On April 4, 2001, the Commission issued a report stating its position that the introduction of the Mexican murders at the sentencing phase of the trial in effect allowed the government to sentence Garza to death as punishment both for the murders for which he was convicted and for the Mexican murders, crimes with which he was never charged. On this basis, the Commission concluded that Garza's death sentence was a violation of international human rights norms to which the United States had committed itself.

Shortly after the Commission issued its report, Garza, who is currently incarcerated at the federal penitentiary in Terre Haute, Indiana, filed this habeas corpus petition under 28 U.S.C.

§ 2241 in the Southern District of Indiana, arguing that the United States was bound by treaty to abide by the Commission's decision. Accordingly, Garza asked the court to invalidate his death sentence and to order his release from custody unless the government agreed to provide him with a new sentencing hearing. Garza also petitioned the court to stay his execution pending resolution of his habeas corpus petition. The district court, however, determined that Garza's petition, although styled a petition for habeas corpus under 28 U.S.C. § 2241, was in fact a successive petition under § 2255. Because Garza had not obtained the permission of the court of appeals to file a successive § 2255 petition, and in any event, § 2255 petitions can be filed only in the district in which the petitioner's conviction and sentence were entered, not in the district in which the petitioner is incarcerated, the district court held that it lacked jurisdiction over this petition and dismissed the action. Garza, whose execution date is now less than a week away, has filed a petition with this court seeking a stay of his execution pending his appeal of the district court's decision.

A stay of execution pending the resolution of a second or successive petition for habeas corpus should be granted only when there are "substantial grounds upon which relief might be granted." *Delo v. Stokes*, 495 U.S. 320, 321 (1990). Whether or not Garza's current § 2241 petition is technically "successive" for purposes of statutes like 28 U.S.C. § 2244, it is a later petition in the broader sense of the term; we therefore believe that the *Stokes* standard is the proper one to apply to the current request for a stay. Before this court could grant a stay, Garza must convince us first that, contrary to the district court's decision, both the district court and we have jurisdiction to hear his petition, and second, that the merits of his petition present a substantial ground on which relief could be granted. The question of the district court's jurisdiction and the availability of § 2241 is a very close one, but in the end we conclude that on these very unusual facts Garza's petition is properly cognizable under § 2241. This procedural victory is of no avail to Garza, however, because an examination of the merits of his petition reveals that it does not present any substantial ground for relief.

For that reason, we deny his petition for a stay of execution.

Determining whether the district court had jurisdiction to consider Garza's petition requires us to examine the interaction between 28 U.S.C. § 2255 and 28 U.S.C. § 2241. In general, federal prisoners who wish to attack the validity of their convictions or sentences are required to proceed under § 2255. Furthermore, in the overwhelming majority of cases § 2255 specifically prohibits prisoners from circumventing § 2255 and challenging their convictions or sentences through a habeas petition under § 2241. There is, however, a recognition in the statute that it will not apply in a narrow class of cases. This is the so-called "savings clause" of § 2255, which allows prisoners to bring § 2241 petitions if they can show that the § 2255 remedy "is inadequate or ineffective to test the legality of [the prisoner's] detention." See 28 U.S.C. § 2255, ¶ 5, last clause. If Garza can show that his petition fits under this narrow exception, then two consequences follow: first, the district court had jurisdiction to consider his habeas petition under § 2241, and second, the proper court in which to file the case was the one encompassing the district of confinement (*i.e.* Southern Indiana), not the district where the case was tried.

Since 1996, § 2255 has contained a provision which bars prisoners from filing second or successive § 2255 petitions except in two narrow circumstances: (1) when newly discovered evidence would establish by clear and convincing evidence that the prisoner is not guilty of the offense for which he was convicted, or (2) when the petition presents a new rule of constitutional law, made retroactive by the Supreme Court to cases on collateral review, that was unavailable to the petitioner at the time of his first petition. See 28 U.S.C. § 2255, ¶ 8. Garza concedes that he has already exhausted his right to one § 2255 petition, and that his arguments based on the Inter-American Commission's recent decision do not fall under either of the clauses permitting successive § 2255 motions, and so he apparently cannot proceed under § 2255. (Indeed, the Fifth Circuit, which is the proper court in which to file a petition for permission to file a successive § 2255 motion, has so concluded twice. See *In re Garza,* No. 01-40473, 2001 WL 579044 (5th

Cir., May 30, 2001); *In re Garza,* No. 01-40596, decided June 11, 2001.) The mere fact that Garza's petition would be barred as a successive petition under § 2255, however, is not enough to bring the petition under § 2255's savings clause; otherwise, the careful structure Congress has created to avoid repetitive filings would mean little or nothing.

The problem before us is what more is necessary to satisfy the savings clause. In *In re Davenport,* 147 F.3d 605 (7th Cir. 1998), this court considered the interaction between § 2255's savings clause and the newly-enacted limitations on successive § 2255 petitions, and we concluded that in most cases, petitions that were barred under the successive petition rules could not be brought under § 2241 either. To hold otherwise, we noted, would be to nullify the limitations on successive petitions. *Id.* at 608. Nevertheless, in *Davenport* we recognized that there might be rare circumstances in which the operation of the successive petition rules absolutely prevented the petitioner from ever having an opportunity to raise a challenge to the legality of his sentence. In such a case, § 2255 would be genuinely inadequate or ineffective to test the legality of his detention. *Id.* at 610-11. We believe that this is one of those exceptional cases.

The *Davenport* decision resolved two consolidated appeals, both from district court decisions holding that the appellants' habeas corpus petitions were barred because they were in effect successive § 2255 petitions. The first appellant, Davenport, argued that his sentence was improperly enhanced on the grounds that he was an armed career criminal. Although Davenport had not made that argument in his direct appeals or in his first § 2255 motion, nothing in the relevant facts or law had changed since Davenport's trial. This meant that Davenport had had an *opportunity* under § 2255, through his first petition, to raise his argument, even if he had procedurally defaulted that opportunity. In that circumstance, the court held, Davenport's earlier failure to raise the point did not transform § 2255 into an inadequate remedy, despite the procedural bar on successive petitions and his current inability to raise this claim. *Id.* at 609. The second appellant, Nichols, was in a different situation. Nichols had been convicted of using a firearm during a drug

offense in violation of 18 U.S.C. § 924(c). At the time Nichols was convicted and when he made his first § 2255 petition, the settled law in this circuit and almost everywhere else established that mere possession of a firearm was sufficient to prove "use" under § 924(c). However, after Nichols's first § 2255 petition had been denied, the Supreme Court ruled in *Bailey v. United States*, 516 U.S. 137 (1995), that mere possession was insufficient to establish use; in *Bousley v. United States*, 523 U.S. 614 (1998), the Court clarified that the *Bailey* rule applied retroactively to cases on collateral review. Therefore, Nichols had a strong argument, which he could not have made at the time of his first § 2255 petition, that he was imprisoned for a non-existent crime.

In spite of the compelling nature of this kind of claim, the wording of § 2255 made it clear that it was not one that could be raised in a successive § 2255 petition. That is because § 2255, ¶ 8, expressly restricts the grounds on which the court of appeals may grant permission to proceed with such a claim to two types: (1) newly discovered evidence, or (2) a new rule of *constitutional* law. Nichols had a claim "that he could at no time present in a motion under section 2255, nor earlier in his direct appeal." *Davenport,* 147 F.3d at 610. For that reason, we held that § 2255 was inadequate to test the legality of Nichols's conviction, the savings clause applied, and Nichols could pursue relief under § 2241. *Id.* at 610-11.

Garza's situation is closely analogous to that of Nichols. In order to see why this is so, it is important to understand the precise nature of Garza's claim. According to Garza (and we find this much of his point persuasive), the treaty on which he relies, the Charter of the Organization of American States, does not, standing alone, give rise to individual rights that would have been directly enforceable during any stage of his direct appeals or in his first § 2255 petition. (If the treaty itself did support private rights of action, there would have been no impediment to Garza's raising his treaty-based arguments earlier. If that were the case, there could be no question but that his present effort would be properly characterized as a successive § 2255 petition and it could not proceed in this

court.) Similarly, the American Declaration of the Rights and Duties of Man, on which the Inter-American Commission relied, is merely an aspirational document that, in itself, creates no directly enforceable rights. Garza's argument is that this situation changed once the Commission issued its report specifically determining that Garza's execution would violate international law; *this* document, he asserts, did create a judicially-enforceable treaty obligation that was both binding on the United States and sufficient to create a private right in him. (His theory invites an analogy to the European Court of Human Rights in Strasbourg, whose judgments create rights enforceable in national tribunals within Europe.) Although this argument is extremely problematic on its merits, we must not confuse lack of substantive merit with lack of jurisdiction. It is not so frivolous as to destroy jurisdiction at the threshold, see *Bell v. Hood,* 327 U.S. 678 (1946). Instead, it is the type of argument that *Davenport* envisions will fall within the savings clause of § 2255. As Garza frames the argument, it was literally impossible for him to have raised it at any time earlier than April 4, 2001, the date of the Commission's decision, because the United States had no judicially-cognizable treaty obligation not to execute Garza until that time. The argument therefore could not have been raised in his direct appeals or in his first § 2255 motion. On the other hand, the argument clearly does not rely on newly discovered evidence or a new rule of constitutional law, and so as the Fifth Circuit has properly recognized it cannot be used as the basis of a successive petition under § 2255. Section 2255 therefore does not now and has never provided an adequate avenue for testing Garza's present challenge to the legality of his sentence. This in turn means that Garza is entitled to raise his argument in a habeas corpus petition under § 2241, in the district of his incarceration.

Before we turn to the merits of Garza's petition, there is one additional potential wrinkle in the jurisdictional analysis that is worth considering. The foregoing discussion assumes for purposes of analysis that Garza's petition would be considered a "second or successive" § 2255 motion. But there is at least a possibility that the motion is not successive at all. If his petition

could be considered a first petition, of course, there would be no bar to his filing it in the Southern District of Texas under § 2255, in which case his § 2241 petition here would be improper. A recent Supreme Court decision at least raises the possibility that this is the proper resolution of Garza's jurisdictional quandary. In *Stewart v. Martinez-Villareal,* 523 U.S. 637 (1998), the petitioner filed a § 2255 petition raising, among other issues, a challenge to his competency to be executed. The district court ruled on the bulk of the issues, but dismissed the competency challenge as not yet ripe, because no execution date had been set. After the execution date was set, the petitioner renewed his motion in the district court challenging his competency. The Supreme Court held that, because the petitioner had raised the competency challenge at the first time it was ripe, it should be considered a first § 2255 petition, not a successive petition. *Id.* at 642-45. This naturally meant that it was not procedurally barred.

At least superficially, *Martinez-Villareal* could suggest that Garza's petition, which he filed as soon as the Inter-American Commission issued its report, should be considered a "first" § 2255 motion. But Garza's situation differs from the *Martinez-Villareal* scenario in important respects. First, the Court in *Martinez-Villareal* relied heavily on the fact that the petitioner had actually raised his competency argument in his first § 2255 motion, and the district court had dismissed that issue as not yet ripe. The Court likened this sequence to a dismissal for failure to exhaust state remedies and held that such a technical procedural dismissal does not bar re-filing the claim. *Id.* at 644-45. Of course, there was no such technical procedural dismissal here, because Garza did not and could not raise the Commission's decision at all in the earlier proceedings – the claim simply did not exist. Similarly, the Court characterized the petition in *Martinez-Villareal* as a renewal or continuation of a single application for relief, rather than as a successive motion. *Id.* at 643. No similar characterization can be made here. Perhaps for these reasons, the Fifth Circuit recently treated a motion in which Garza attempted to present this theory to that court as a successive one in a one-line order. See *In re Garza,*

No. 01-40596, *supra.* We assume that if that court had concluded the petition was not successive, it would have said so and referred Garza back to the district court. With law of the case principles in mind, we take this as establishing the successive nature of the petition and hence the proposition that Garza cannot seek relief under § 2255.

On the merits, Garza is not entitled to a stay of his execution unless he can establish that he has presented a substantial ground on which relief could be granted. It is here that Garza's petition falters. His claim depends on a showing that the Inter-American Commission's report created an enforceable obligation that the United States was bound by treaty to honor. However, as a general rule, international agreements, even those benefitting private parties, do not create private rights enforceable in domestic courts. There are, of course, exceptions to this rule, but an international agreement can be considered to create judicially-enforceable private rights only where such rights are contemplated in the agreement itself. See *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 373 (7th Cir. 1985); Restatement (Third) of the Foreign Relations Law of the United States, § 703 cmt. c, § 907 cmt. a. Whether a particular international agreement provides for private enforcement is a matter for judicial interpretation of the agreement. See *Frolova*, 761 F.2d at 373; Restatement § 907 cmt. a. We can find no indication in the treaties Garza relies on that the parties to the treaties intended for the Inter-American Commission's reports to create privately-enforceable rights, and ample evidence that they did not.

The only relevant treaty is the Charter of the Organization of American States (OAS), which the United States ratified in 1951, and ratified as amended in 1968. That treaty authorizes the creation of the Inter-American Commission on Human Rights and contains the following relevant provision:

> There shall be an Inter-American Commission on Human Rights, whose principal function shall be to promote the observance and protection of human rights and to serve as a consultative organ of the Organization in these matters.

> An inter-American convention on human rights shall determine the structure, competence, and procedure of this Commission, as well as those of other organs responsible for these matters.

OAS Charter (Amended) Article 112, 21 U.S.T. 607. The American Declaration of the Rights and Duties of Man, on which the Commission relied in reaching its conclusions in Garza's case, is an aspirational document which, as Garza admitted in his petition in the district court, did not on its own create any enforceable obligations on the part of any of the OAS member nations. More recently, the OAS has developed an American Convention on Human Rights, which creates an Inter-American Court of Human Rights. Under the American Convention, the Inter-American Court's decisions are potentially binding on member nations. The rub is this: although the United States has signed the American Convention, it has not ratified it, and so that document does not yet qualify as one of the "treaties" of the United States that creates binding obligations.

Recognizing the distinction between the obligations (or lack thereof) created under the OAS Charter and the American Declaration and those created by the American Convention, the Statute of the Inter-American Commission on Human Rights, which is the governing document for the Commission, sets out two sets of procedures: one for dealing with complaints against member nations that have ratified the American Convention, and another for dealing with complaints against member nations like the United States that have not yet ratified the American Convention. The Statute, which has been adopted by the OAS General Assembly, gives the Commission the following relevant powers with respect to nations that have not ratified the American Convention:

> [T]o make recommendations to the governments of the states on the adoption of progressive measures in favor of human rights in the framework of their legislation, constitutional provisions and international commitments, as well as appropriate measures to further observance of

those rights; . . .

> [T]o pay particular attention to the observance of the human rights referred to in [certain provisions of] the American Declaration of the Rights of Man; . . .

> [T]o examine communications submitted to it, . . . and to make recommendations to [the government of any member state not a Party to the Convention], when it finds this appropriate, in order to bring about more effective observance of fundamental human rights . . . .

Statute of the Inter-American Commission on Human Rights, Arts. 18, 20.

No court of appeals has yet decided whethe r the Inter-American Commission's decisions create obligations binding on the United States, although the Fourth Circuit has expressed doubt that the Commission's decisions could have any effect on domestic judicial proceedings. *Roach v. Aiken*, 781 F.2d 379, 380-81 (4th Cir. 1986). We share the Fourth Circuit's doubt, based on the language of the OAS Charter and the Commission's Statute, both of which indicate that the United States has not obligated itself to be bound by the Commission's decisions – or more accurately not to the degree that would be required to create privately enforceable rights. Nothing in the OAS Charter suggests an intention that member states will be bound by the Commission's decisions before the American Convention goes into effect. To the contrary, the OAS Charter's reference to the Convention shows that the signatories to the Charter intended to leave for another day any agreement to create an international human rights organization with the power to bind members. The language of the Commission's statute similarly shows that the Commission does not have the power to bind member states. The Commission's power is only to make "recommendations," which, according to the plain language of the term, are not binding. Garza's likelihood of success on the merits can in no way be described as "substantial" under these circumstances; indeed, we think it quite unlikely that "recommendations to the government of any member state" could create judicially-cognizable rights in

individuals. By their very nature, non-binding recommendations to a government on how to conduct its affairs would appear to be addressed to the executive and legislative branches of the government, not to the courts.

For these reasons, Garza has not presented any substantial ground on which relief could be granted in his habeas corpus petition. We therefore **DENY** the petition for stay of execution.