IMG-138                                    **PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2044
_____

JESUS ALBERTO FLORES-NOVA;
ARACELI CASTAÑO-GARDUNO,
a/k/a Ariceli Flores
JESUS ALBERTO FLORES-NOVA;

ARACELI CASTAÑO-GARDUNO,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A099-690-362 and A094-941-559)
Immigration Judge:  Honorable Charles Honeyman

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 18, 2011

Before:  SCIRICA, FISHER and ALDISERT, <u>Circuit</u> <u>Judges</u>.

(Opinion Filed: July 25, 2011)

Jacqueline B. Martinez, Esq.
JBM Immigration Group
428 Forbes Avenue, Suite 2510
Pittsburgh, PA  15219
        *Counsel for Petitioners*

Nairi S. Gruzenski, Esq.
Andrew J. Oliveira, Esq.
Phillip M. Truman, Esq.
United States Department of Justice
Office of Immigration Litigation
Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC  20044
        *Counsel for Respondent*

_____

OPINION

_____

PER CURIAM

Jesus Alberto Flores-Nova and his wife, Araceli Castaño-Garduno, both natives and citizens of Mexico, petition for review of the order of the Board of Immigration Appeals ("BIA") denying their application for cancellation of removal.  For the reasons that follow, we will deny the petition on the merits.

Flores-Nova and Castaño-Garduno came to the United States without a valid visa or other travel documents in June 1992 and August 1996, respectively.  They have three American born children (ages five, ten, and eleven).  In September 1999, the Petitioners travelled to Mexico to attend

the funeral of Flores-Nova's father. While there, Araceli Castaño-Garduno was injured in a serious fall. During the course of her medical treatment, Castaño-Garduno learned that she was pregnant. She was placed in the care of a midwife, who restricted her to bed rest and directed her not to travel until the threat of miscarriage had abated. The Petitioners returned to the United States in February 2000.[1] When their religious worker visa applications were denied, the Department of Homeland Security placed the couple in consolidated removal proceedings for being present without authorization or parole. In 2008, the Petitioners applied for cancellation of removal under INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1), claiming their continuous physical presence in the United States for ten years, the absence of any criminal statutory bars, and exceptional and extremely unusual hardship on their children if the Petitioners were removed to Mexico.

The Government filed a motion to pretermit the Petitioners' applications because they failed to maintain the requisite continuous presence in the United States because of their 176-day absence. The Petitioners conceded that they left the country for 176 days, but argued that special circumstances occasioned by Castaño-Garduno's medical needs warranted excusing, or equitably tolling, their absence of physical presence in the United States for humanitarian reasons.

The Immigration Judge ("IJ") denied the Petitioners' applications for cancellation of removal, ordered them removed to Mexico, and granted voluntary departure.

---

[1] In 2004, Flores-Nova travelled to Mexico for six days to interview for an H-2B visa.

3

Although sympathetic to the Petitioners' plight, the IJ found nothing in the "unambiguous language" of the statute or in caselaw that provided the kind of excuse or equitable tolling that the Petitioners requested. Pet'rs' App. Vol. I at 50-51. The IJ pretermitted the Petitioners' applications because their prolonged stay in Mexico created a break in their continuous physical presence in the United States in excess of ninety days, and thus their continuous presence was deemed to have ended under 8 U.S.C. § 1229b(d)(2). The BIA affirmed and summarily dismissed the Petitioners' appeal. The Petitioners filed this timely petition for review.

The Petitioners raise four arguments in their petition for review: first, the BIA's strict construction of the continuous presence provision is impermissible and is not entitled to deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984); second, the continuous presence provision violates the Petitioners' rights under the Equal Protection Clause; third, the United States is bound by international law to grant the petitioners a full hearing on their applications for cancellation of removal; and fourth, pretermitting the Petitioners' application for cancellation of removal without a hearing on the merits violated the due process rights of their American born children.

We have jurisdiction to review the constitutional claims and questions of law raised in this petition for review

4

pursuant to 8 U.S.C. § 1252(a)(2)(D).[2] Sukwanputra v. Gonzales, 434 F.3d 627, 634 (3d Cir. 2006). "We review the BIA's legal determinations de novo, subject to established principles of deference." Wang v. Ashcroft, 368 F.3d 347, 349 (3d Cir. 2004).

We need not conduct a Chevron analysis regarding the first claim because there is nothing impermissible about the

[2] We disagree with the Government's contention that we lack jurisdiction to consider the Petitioners' fourth claim because it is not exhausted. The Petitioners allege that their minor children's right to reside in the United States was violated because the Petitioners were denied the opportunity to present evidence of the extreme hardship their removal would impose on their citizen children. Pet'rs' Br. at 24-25 (citing Acosta v. Gaffney, 558 F.2d 1153 (3d Cir. 1977). Exhaustion is not required for substantive due process claims like the petitioners' because "the BIA does not have jurisdiction to adjudicate constitutional issues." Khan v. Att'y Gen., 448 F.3d 226, 236 n.8 (3d Cir. 2006) (quoting Bonhometre v. Gonzales, 414 F.3d 442, 447 n.7 (3d Cir. 2005)). On the merits, the Petitioners' arguments based on their children's constitutional rights are unpersuasive. As we previously held, the deportation of the alien parents of children born in the United States does not violate the constitutional rights of the children to choose their residence. Acosta v. Gaffney, 558 F.2d at 1158 (parents' deportation "will merely postpone, but not bar, [the United States citizen child's] residence in the United States if [] he should ultimately choose to live here"). Moreover, a hearing on the merits as to the extreme hardship factor would not change the result in this case because the Petitioners cannot satisfy the statutory continuous physical presence requirement.

BIA's application of the stop-time rule contained in § 1229b(d)(2). See De Leon-Ochoa v. Att'y Gen., 622 F.3d 341, 353 (3d Cir. 2010) (holding that the Chevron inquiry ends "if Congress has spoken directly to the question at issue, in which case 'both the agency and the court must give effect to the plain language of the statute.'") (quoting Yusupov v. Att'y Gen., 518 F.3d 185, 197 (3d Cir. 2008)). The question at issue here is whether § 1229b(d)(2) provides for an exception to the 90/180-day stop-time rule for humanitarian reasons. The Petitioners' argument that the provision is ambiguous is meritless.[3] A statute is not ambiguous "merely because it does not expressly forbid every possible mechanism for functional – but not actual – satisfaction of statutory requirements." De Leon-Ochoa v. Att'y Gen., 622 F.3d at 353 (reviewing 8 U.S.C. § 1254a).

We conclude that Congress has directly spoken to the issue through the plain language of the statute. Section § 1229b(d)(2) provides that "[a]n alien shall be considered to have failed to maintain continuous physical presence in the United States . . . if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days." See also Mendez-Reyes v. Att'y Gen., 428 F.3d 187, 191-92 (3d Cir. 2005)

---

[3] The Petitioners' reliance on Tapia v. Gonzales, 430 F.3d 997 (9th Cir. 2005), is misplaced. In Tapia, the Ninth Circuit Court of Appeals merely held that the petitioner's physical presence was not interrupted by the fact that he was stopped at the border and turned away four times before he was allowed to reenter after a 30-day trip to attend a family member's funeral. Id. at 1002. Most important, the Court noted that § 1229b(d)(2) "mandate[s] that absences beyond the 90/180-day period would constitute a break." Id. at 1001.

(construing § 1229b(d)(2) as setting forth the circumstances "under which continuous physical presence must be deemed to have been broken" and that "Congress has declared that a departure of more than 90 days shall constitute a break in physical presence . . . .") (emphasis in the original). Contrary to the Petitioners' contention, their intent to return to the United States is irrelevant because § 1229b(d)(2) has no scienter requirement.

The Petitioners' equal protection claim is also without merit because non-permanent resident aliens and permanent resident aliens seeking naturalization are not similarly situated groups for equal protection purposes. "The fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not [mean] that all aliens are entitled to all the advantages of citizenship . . . ." Mathews v. Diaz, 426 U.S. 67, 78 (1976). Nor does the Clause establish that "all aliens must be placed in a single homogeneous legal classification." Id. In any event, the Petitioners failed to meet their burden of establishing that § 1229b(d)(2) is unconstitutional. The standard of review applied in equal protection cases that do not involve suspect classes or the exercise of a fundamental constitutional right requires a "facially legitimate and bona fide" rationale supporting the immigration statute in question. Fiallo v. Bell, 430 U.S. 787, 794-95 (1977); see also Breyer v. Meissner, 214 F.3d 416, 422 n.6 (3d Cir. 2000) (recognizing that the "facially legitimate and bona fide reason" test in the immigration context "has been found analytically equivalent to the rational basis test normally applied in equal protection cases in which no suspect class is involved") (citing other cases). Here, the Petitioners have offered no basis, and we find none, upon which we could conclude that § 1229b(d)(2) is not rationally related to a legitimate government purpose. See Heller v.

7

Doe, 509 U.S. 312, 320-21 (1993) (holding that the burden is on the petitioners to show that a statute is not rationally related by "negat[ing] every conceivable basis which might support it," whether or not the basis has a foundation in the record).

Turning to the international law claims, the Petitioners first rely on a decision of the Inter-American Commission on Human Rights ("IACHR"), Smith v. United States, Case 12.562, Inter-Am. Comm'n H.R., Report No. 81/10 (2010), 2010 IACHR 100, 2010 WL 6758869 (also available at http://www.cidh.oas.org/casos/10.eng.htm.) They claim that the United States is bound by the IACHR's finding that removing lawful permanent residents without giving them an opportunity for a meaningful hearing would violate numerous articles of the "American Declaration of the Rights and Duties of Man" ("American Declaration"), arts. 5, 6, 7, 16, and 17, O.A.S. Res. XXX (1948), O.A.S. Off. Rec. OEA/Ser.L/V/I.4 rev. (1965). The Petitioners also argue that the United States must abide by a 2008 IACHR decision that the United States is "bound to respect" the American Declaration. See Mortlock v. United States, Case 12.534, Inter-Am. Comm'n H.R., Report No. 63/08 (July 25, 2008), 2008 IACHR 893, 2008 WL 6857315 (also available at http://www.cidh.oas.org/casos/08.eng.htm.) In support of their claim, the Petitioners cite the Charter of the Organization of American States (OAS), which was originally ratified by the United States in 1951, and ratified as amended in 1968. The OAS Charter provided for the creation of the IACHR and created the American Convention on Human Rights (the "American Convention") to establish the Commission. OAS Charter (Amended) Article 112, 21 U.S.T. 607; see also Garza v. Lappin, 253 F.3d 918, 924-25 (7th Cir. 2001). The American Convention charged the

IACHR with interpreting the American Declaration. Organization of American States, American Convention on Human Rights, Nov. 22, 1969, O.A.S.T.S. No. 36, 1144 U.N.T.S. 123, 9 I.L.M. 673.

We conclude that the IACHR's decision does not create an obligation binding on the United States for the following reasons. First, the language of the OAS Charter and of the IACHR's governing statute indicates that IACHR's decisions are not binding on the United States. In Garza, the Seventh Circuit Court of Appeals examined whether the United States was obligated to follow the IACHR's report recommending that Garza's execution under a federal death sentence would violate international human rights standards set forth in the American Declaration. In holding that the United States was not so bound, the Court of Appeals reasoned that

> [n]othing in the OAS Charter suggests an intention that member states [including the United States] will be bound by the Commission's decisions before the American Convention goes into effect. To the contrary, the OAS Charter's reference to the Convention shows that the signatories to the Charter intended to leave for another day any agreement to create an international human rights organization with the power to bind members.

Garza v. Lappin, 253 F.3d at 925. [4]

As for the IACHR's governing statute, the Statute of the Inter-American Commission on Human Rights (the "Commission's Statute"), the Garza Court noted that the law set forth two separate procedures for the IACHR based on the OAS member nation's status vis-à-vis ratification of the American Convention. Id. By setting forth two different procedures for OAS members states that have ratified the American Convention and for those that have not ratified it, the governing statute implicitly recognized the distinction between the obligations created under the OAS Charter and those created (or not created) by the American Convention. Id. Moreover, the Court of Appeals reasoned, the language of the Commission's statute indicated that the IACHR did not

---

[4] The OAS Charter expressly provides for the IACHR "to serve as a consultative organ of the Organization in these [human rights] matters." OAS Charter (amended) Article 112, 21 U.S.T. 607.

have the power to bind member states.[5] "The Commission's power is only to make 'recommendations,' which, according to the plain language of the term, are not binding." Id. We agree with the reasoning and conclusions of the Seventh Circuit in Garza. We hold that the IACHR's advisory opinions are not binding on the United States and, therefore, they are not enforceable domestically.

Second, to the extent that the IACHR operates under the authority given to it by the American Convention, its

---

[5] Articles 18 and 20 of the Commission's Statute empower the IACHR "to make recommendations to the governments of the states on the adoption of progressive measures in favor of human rights in the framework of their legislation, constitutional provisions and international commitments, as well as appropriate measures to further observance of those rights; . . . to pay particular attention to the observance of the human rights referred to in [certain provisions of] the American Declaration of the Rights and Duties of Man; . . . [and] to examine communications submitted to it, . . . and to make recommendations to [the government of any member state not a Party to the Convention], when it finds this appropriate . . . ." Organization of American States, Statute of the Inter-American Commission on Human Rights, 1 October 1979, O.A.S. Off. Rec. OEA/Ser.P/IX.0.2/80, Vol. 1 at 88, available at http://www.unhcr.org/refworld/docid/3ae6b38e2b.html. See also Garza, 253 F.3d at 925.

decisions are not enforceable domestically.[6] Although the United States is a signatory to the American Convention, it has not ratified the Convention to date, and thus, the American Convention does not have the force of law in the United States. Garza v. Lappin, 253 F.3d at 925; see also Flores v. S. Peru Copper Corp., 414 F.3d 233, 258 (2d Cir. 2003).[7] As for the American Declaration, unlike the American Convention and the OAS Charter, the Declaration

---

[6] A treaty (or international agreement) binds the United States internationally upon its ratification by two-thirds of the Senate. U.S. Const. art. II, § 2, cl. 2.; see also Auguste v. Ridge, 395 F.3d 123, 141 n.18 (3d Cir. 2005) (describing the treaty-making process of the executive branch and the Senate). A ratified treaty "is the law of the land as an act of Congress is, whenever its provisions prescribe a rule by which the rights of the private citizen or subject may be determined." Mannington Mills, Inc. v. Congoleum Corp., 595 F.2d 1287, 1298 (3d Cir. 1979) (quoting Head Money Cases (Edye v. Robertson), 112 U.S. 580, 598-99 (1884)). Unless a treaty is self-executing, it must be implemented by legislation before it gives rise to a private cause of action. Mannington Mills, Inc., 595 F.2d at 1298; see also Medillin v. Texas, 552 U.S. 491, 505 & n.2 (2008). Unratified treaties are not binding on the United States and do not have the force of law. Garza v. Lappin, 253 F.3d at 925.

[7] As of June 30, 2010, the United States has not ratified the American Convention. See http://www.cidh.oas.org (follow "Basic Documents Pertaining to Human Rights in the Inter-American System" hyperlink; then under "American Convention on Human Rights," follow "Signatures and Current Status of Ratification" hyperlink).

is not a treaty. In the best sense, the American Declaration, adopted by United States and twenty other original OAS member states at the Ninth International Conference of American States in Bogotá, Colombia in 1948, represents a noble statement of the human rights aspirations of the American States, but creates no binding set of obligations. See Igartua v. United States, 626 F.3d 592, 603 n.11 (1st Cir. 2010) (holding that the American Declaration "is merely an aspirational document"); Garza v. Lappin, 253 F.3d at 923 (same); Flores v. S. Peru Copper Corp., 414 F.3d at 263 (same). Accordingly, neither the unratified American Convention nor the American Declaration is itself enforceable domestically.

Next, the Petitioners argue that the current statutory construction of 8 U.S.C. § 1229b(b) does not comply with customary international law as expressed in Article 3(1) of the United Nations Convention on the Rights of the Child ("CRC"), Nov. 20, 1989, 1577 U.N.T.S. 3, available at http://www2.ohchr.org/english/law/crc.htm.[8] The Petitioners concede that the United States has not ratified the CRC. The Petitioners broadly assert that CRC has been ratified by a host of countries and that the United States is essentially alone in removing aliens without a hearing to determine the equities pertaining to their removal, but they offer no evidence that the States Parties have taken significant steps to put Article 3(1) into practice. In any event, even if we assume, arguendo, that Article 3(1) of the CRC constitutes customary international

---

[8] Article 3(1) provides that "[i]n all actions concerning children, whether undertaken by public or private social welfare institutions, courts of law, administrative authorities or legislative bodies, the best interests of the child shall be a primary consideration."

13

law, we conclude that Article 3(1) is not binding on the United States or this Court to the extent that it conflicts with 8 U.S.C. § 1229b(b), in which Congress set forth the extent to which a child's hardship may be considered in determining eligibility for cancellation of removal.  See Payne-Barahona v. Gonzales, 474 F.3d 1, 3-4 (1st Cir. 2007) (stating that where customary international law conflicts with a federal statute, "the clear intent of Congress would control"); Martinez-Lopez v. Gonzales, 454 F.3d 500, 502-03 (5th Cir. 2006) (holding that customary international law "cannot override congressional intent as expressed by statute") (citing other cases).

Accordingly, we will deny the petition for review.

14