Anthony J. GRAY–BEY, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 99–4131.

United States Court of Appeals, Seventh Circuit.

Argued March 1, 2000

Decided April 13, 2000

Barry Levenstam, Michelle L. Patail (argued), Jenner & Block, Chicago, IL, for petitioner.

William J. Lipscomb (argued), Office of the U.S. Attorney, Milwaukee, WI, for respondent.

Before COFFEY, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

PER CURIAM.

Ten years ago, a jury found Anthony Gray–Bey guilty of drug offenses, plus using or carrying a firearm during and in relation to his drug trafficking. See 18 U.S.C. (1994 ed.) § 924(c). The firearm conviction added 60 months' imprisonment to Gray–Bey's term. We affirmed his conviction and sentence on direct appeal, *United States v. Goines,* 988 F.2d 750 (7th Cir.1993), and a collateral attack under 28 U.S.C. § 2255 was unsuccessful. *Gray–Bey v. United States,* 156 F.3d 733 (7th Cir.1998). On appeal from the denial of relief under § 2255, Gray–Bey contended among other things that he had not used the firearm "actively," so that *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), required his § 924(c) conviction to be vacated. We held, however, that Gray–Bey had forfeited that contention by not raising it earlier. 156 F.3d at 742–43.

Next Gray–Bey asked the United States District Court for the Eastern District of Arkansas (where his prison is located) to issue a writ of habeas corpus under 28 U.S.C. § 2241. That court transferred the petition to us after concluding that Gray–Bey is attempting to evade the limitations on second or successive collateral attacks under § 2255, which may be pursued only after approval by the court of appeals that has jurisdiction over the district court that imposed the sentence. 28 U.S.C. §§ 2244(b), 2255 ¶ 8. We dismissed Gray–Bey's request without prejudice because he had not provided the information required by Circuit Rule 22.2(a). Gray–Bey filed anew, this time calling his papers an

application for leave to commence a second collateral attack under § 2255. We appointed counsel, identified some questions that require attention, and set the matter for oral argument. *Gray–Bey v. United States*, 201 F.3d 866 (7th Cir. 2000).

■ Counsel sought to enlarge Gray–Bey's options by asking us to recall the mandate in order to redecide the first collateral attack, rather than to decide whether to authorize a second. By recalling the mandate in the prior case, counsel contended, we could address the merits of Gray–Bey's *Bailey* argument without regard to §§ 2244(b) and 2255 ¶ 8. Given *Calderon v. Thompson*, 523 U.S. 538, 554–59, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), however, recalling a mandate more than a year after its issuance just to apply the benefit of hindsight would be an abuse of discretion. What is more, Gray–Bey's motion to recall the mandate is effectively an application for leave to pursue another collateral attack. In *Calderon* the court of appeals recalled its mandate *sua sponte* in order to hear the case en banc, curing procedural glitches that stymied consideration of an earlier request for that step. By contrast, Gray–Bey has filed a motion to recall the mandate on substantive grounds. As the Court remarked in *Calderon*, "a prisoner's motion to recall the mandate on the basis of the merits of the underlying decision can be regarded as a second or successive application for purposes of § 2244(b). Otherwise, petitioners could evade the bar against relitigation of claims presented in a prior application, § 2244(b)(1), or the bar against litigation of claims not presented in a prior application, § 2244(b)(2). If the court grants such a motion, its action is subject to [the] AEDPA". 523 U.S. at 553, 118 S.Ct. 1489. See also, e.g., *Johnson v. United States*, 196 F.3d 802, 805 (7th Cir.1999); *Banks v. United States*, 167 F.3d 1082, 1084 (7th Cir.1999); *Burris v. Parke*, 130 F.3d 782, 784 (7th Cir.1997). Because it would be proper to recall the mandate only if it is proper to authorize a second or successive collateral attack, the motion is pointless.

We deny it and move to the questions posed by § 2244(b) and § 2255 ¶ 8.

■ Our order setting the matter for argument asked the parties to brief multiple issues, but the answer to one of them is dispositive. Section 2255 permits the court to authorize a second petition under that section only if the motion identifies newly discovered evidence establishing his innocence (which Gray–Bey does not contend) or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255 ¶ 8(2). (Section 2244(b)(2)(A) creates a functionally identical requirement.) *Bailey* has been made retroactive to cases on collateral attack, see *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), and its rule was unavailable to Gray–Bey at the time of his trial, direct appeal, and the beginning of his collateral attack, for *Bailey* was not decided until December 6, 1995, and announced a principle that departed from the rule previously applied in this circuit. By the time *Bailey* came down, Gray–Bey's initial collateral attack was on appeal. He had neglected to raise the issue in the district court, although there was a conflict among the circuits on the subject, and the Supreme Court granted certiorari in *Bailey* on April 17, 1995, while Gray–Bey's collateral attack was pending. But for purposes of § 2255 ¶ 8(2) a rule is "unavailable" until the Supreme Court renders its decision, for it is the high court's decision that must be held retroactive (as *Bailey* was held retroactive by *Bousley*). What stymies Gray–Bey's application, however, is the opening clause of ¶ 8(2): that the Supreme Court must have announced a "new rule of constitutional law". *Bailey* is not a rule of constitutional law; and although *Bailey* sets up constitutional claims, none of these is "new."

All *Bailey* does is construe the meaning of "use" in § 924(c) to entail "active" rather than "passive" employment of a gun. *Bailey* does not purport to be anything

other than a statutory decision; no one doubts that the Constitution permits Congress to penalize possession of a firearm during and in relationship to a drug offense. Cf. *Muscarello v. United States*, 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). *Bailey* held that the version of § 924(c) applicable to Gray–Bey did not proscribe simple possession. (Section 924(c) was amended in November 1998 to prohibit possessing a firearm "in furtherance of" a drug offense or crime of violence. Pub.L. 105–386, 112 Stat. 3469.) A statutory decision may have constitutional fallout, but such consequences do not make *Bailey* itself a "new rule of constitutional law". *Young v. United States*, 124 F.3d 794, 798–99 (7th Cir.1997); *In re Davenport*, 147 F.3d 605, 610–11 (7th Cir.1998). See also, e.g., *Gilmore v. Taylor*, 508 U.S. 333, 342, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993) (error in stating the elements of the offense in jury instructions is not a constitutional flaw). *Bailey* did not change § 924(c), or even the Supreme Court's understanding of that statute. It just determined what § 924(c) meant from its enactment through 1998. *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994); cf. *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993).

*Bousley* considered one of the constitutional consequences of this statutory decision: misunderstanding the elements of an offense when pleading guilty may render the plea unintelligent. Similarly, a trial record that lacks evidence adequate to establish all elements of the offense (as correctly understood) could support collateral relief to avoid imprisoning an innocent person. But these constitutional effects of a statutory decision were not created by *Bailey* and are not "new" by any measure. *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), establishes that actual innocence justifies collateral relief under § 2255, cf. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and the rule that defective guilty pleas may be set aside is even older. More than a year before

*Bousley*, we applied these principles in collateral attacks based on *Bailey*. E.g., *Stanback v. United States*, 113 F.3d 651 (7th Cir.1997).

Nothing in *Hohn v. United States*, 524 U.S. 236, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998), implies that *Bailey* created a new constitutional rule, or that any of the constitutional consequences of statutory interpretation is a "new rule of constitutional law". The only question before the Court was whether a request for a certificate of appealability is a "case in" a court of appeals for certiorari purposes; the Court said nothing about the merits of the claim and instructed the Eighth Circuit to review them in the first instance in light of the Solicitor General's position—which was functionally the same as the position we adopted in *Buggs v. United States*, 153 F.3d 439, 443–45 (7th Cir.1998). See also *id.* at 443–44 n.4.

Because *Bailey* is not a constitutional rule, and because none of the constitutional consequences of *Bailey*'s interpretation of § 924(c) is a "new rule of constitutional law"—as opposed to an application of old constitutional rules to new situations—Gray–Bey's application for permission to commence a second collateral attack must be denied. It does not meet the substantive standards of §§ 2244(b)(2)(A) and 2255 ¶ 8.

■ What then of § 2241, which was not amended by the Antiterrorism and Effective Death Penalty Act? See *Felker v. Turpin*, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996); *Valona v. United States*, 138 F.3d 693 (7th Cir. 1998). Our order asked the parties to brief this compound question:

> Does this court's decision in *In re Davenport*, 147 F.3d 605 (7th Cir.1998), require Gray–Bey to file his petition under § 2241, and would such a § 2241 petition be properly construed as nonsuccessive?

Having given this subject some additional thought, we now conclude that the decision is not ours to make, and we therefore do

not answer either part of this question. A court of appeals may authorize (or decline to authorize) the filing of a successive motion under § 2255, but Gray–Bey does not need our authorization to file a petition under § 2241. We stressed in *Valona* that a district court presented with a petition for a writ of habeas corpus under § 2241 should analyze that petition on its own terms, without assuming that whatever cannot proceed under § 2255 also cannot proceed under § 2241—though as *Felker* observes a court in which a petition under § 2241 is filed must treat the new successive–petition rules as guideposts. Cf. *Cooper v. United States*, 199 F.3d 898, 901 (7th Cir.1999). Gray–Bey began these proceedings by filing a § 2241 petition in the Eastern District of Arkansas, and we think that he is entitled to a decision in the regular course—that is, by a district judge, followed by appellate review and the opportunity to seek review by the Supreme Court—under that statute.

A transfer would be pointless if Gray–Bey's request for habeas corpus were doomed by § 2255 ¶ 5, which blocks a prisoner's resort to § 2241 unless "the remedy by motion [under § 2255] is inadequate or ineffective to test the legality of his detention." One could read this language, as the opinion dissenting from the briefing order did, to preclude Gray–Bey's challenge, because he had an opportunity to raise the *Bailey* challenge earlier. But it is possible to understand § 2255 ¶ 5 to permit the challenge in the light of § 2255 ¶ 8, which the AEDPA added. When Congress added the language that requires prior appellate approval, it may have overlooked the sort of situation Gray–Bey presents—the interaction of *old* constitutional rules with *new* statutory interpretations. *Bousley* and *Davis* show that the kind of claim Gray–Bey presents is one for which § 2255 provides a remedy. Indeed, nine of his co-defendants, who raised *Bailey* contentions in their initial collateral attacks, have had their § 924(c) convictions vacated. (The status of his remaining three confederates is unclear.) Until the AEDPA Gray–Bey, too, would have been

entitled to a disposition on the merits, for his second § 2255 application could not have been dismissed as an abuse of the writ. Whether he could have obtained *relief* is more difficult; perhaps the prosecutor gave in too easily when Gray–Bey's partners in crime filed their petitions. *Muscarello,* which was released after the prosecutor consented to other defendants' requests, may stiffen prosecutorial resolve. At all events, however, no one doubts that until the AEDPA Gray–Bey could have had a *decision.*

Section 2255 ¶ 8 closes off the old route to decision, but without modifying § 2255 ¶ 5, so perhaps Gray–Bey and similarly situated prisoners have an escape hatch after all for the kind of claims that otherwise justify successive requests for collateral relief and do not smack of abuse of the writ. But perhaps § 2255 ¶ 8 means instead that prisoners today are never *entitled* to multiple collateral attacks, so that their inability to obtain another round of litigation cannot demonstrate that § 2255 as a whole is "inadequate or ineffective to test the legality of ... detention." We mention these arguments pro and con not to resolve them—that is not our function—but simply to show that the transfer is serious, rather than a source of busywork for the Eastern District of Arkansas and the Eighth Circuit, to which Gray–Bey's appeal ultimately will lie.

The request for permission to file a second motion under § 2255 is denied. On the authority of 28 U.S.C. § 1631 the papers are transferred to the United States District Court for the Eastern District of Arkansas for consideration as a petition for a writ of habeas corpus under § 2241.