In the

# United States Court of Appeals

### For the Seventh Circuit

No. 94-3360

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RUSSELL PREVATTE,

*Defendant-Appellant.*

On Motion to Recall Mandate

SUBMITTED DECEMBER 27, 2001—DECIDED AUGUST 8, 2002

Before CUDAHY, RIPPLE and DIANE P. WOOD, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Russell "Rusty" Prevatte brings this motion to recall mandate and seeks immediate release from incarceration. For the following reasons, we believe that this motion ought to be construed as a petition for a writ of habeas corpus under 28 U.S.C. § 2241 and transferred to the District of Colorado pursuant to 28 U.S.C. § 1631.

## I

## BACKGROUND

The facts leading up to Mr. Prevatte's conviction are reported in detail in two prior opinions, *see United States*

*v. Prevatte,* 16 F.3d 767 (7th Cir. 1994), and *United States v. Prevatte,* 66 F.3d 840 (7th Cir. 1995). We therefore shall set forth only those facts that are pertinent to Mr. Prevatte's current motion.

On December 23, 1991, Mr. Prevatte and some confederates detonated a pipe bomb in an alley in Hammond, Indiana. The bomb damaged the adjacent house and garage; specifically, it punctured a gas meter located on the home. It appears, but is not clear from the record, that the bomb also damaged a pole owned or maintained by the Northern Indiana Public Service Company, the provider of natural gas to the adjacent house. The shrapnel from the explosion caused the death of Emily Antkowicz who was in her yard next to the alley when the bomb exploded.

Mr. Prevatte and his confederates were apprehended several months later. Mr. Prevatte was charged with "maliciously damag[ing] or destroy[ing] . . . by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce . . . ." 18 U.S.C. § 844(i). Specifically, in Count II of a twenty-four count indictment, the grand jury charged that Mr. Prevatte "did maliciously damage and destroy, or attempt to damage and destroy, by means of an explosive, to wit: a pipe bomb, a building or other real and personal property located at 1425 Stanton, Hammond, Indiana which was used in or affected interstate commerce, which resulted in the death of Emily Antkowicz; [a]ll in violation of Title 18, United States Code, Section 844(i) and Title 18, United States Code, Section 2." R.1 at 7.

At trial, the Government established the interstate link by submitting evidence that the bombing not only had damaged a gas meter at 1425 Stanton, but also that the damage had caused a leak of gas that had traveled through

interstate pipelines. *See Prevatte*, 16 F.3d at 771 n.3 (citing Tr. VI at 813 and Tr. VII at 1228). The jury returned a verdict against Mr. Prevatte on Count II of the indictment, and the district court sentenced him to life imprisonment.

Mr. Prevatte appealed his conviction and his sentence. However, he did not raise lack of an interstate nexus as a basis for error. Nevertheless, this court sua sponte raised and resolved the issue; it stated:

> No claim is made on appeal that this bombing was without the interstate commerce nexus required under 18 U.S.C. § 844(i). However, in *United States v. Stillwell*, 900 F.2d 1104, 1110 n.2 (7th Cir.), *cert. denied*, 498 U.S. 838 (1990), this court held that the adequacy of the interstate commerce nexus was jurisdictional. This court also held in *Stillwell* that the bombing of a private home supplied by natural gas from outside the state had a sufficient nexus to interstate commerce under § 844(i). *Id.* at 1107 (stating that "Congress intended § 844(i) to reach a private residence which is supplied with interstate natural gas"). We are constrained to follow *Stillwell* as the law of this circuit. There was evidence of record that the bombings had caused damage to gas meters and had caused leaks of gas that had traveled through interstate pipelines.

*Id.* (parallel and record citations omitted). Mr. Prevatte's conviction was affirmed, but this court remanded for resentencing. *See United States v. Prevatte,* 16 F.3d 767 (7th Cir. 1994). After a subsequent appeal and remand, *see United States v. Prevatte*, 66 F.3d 840 (7th Cir. 1995), Mr. Prevatte eventually was sentenced to 44 years' imprisonment.

In 1997, Mr. Prevatte sought post-conviction relief under 28 U.S.C. § 2255. Specifically, Mr. Prevatte argued that the Government had withheld favorable evidence from him

in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and had violated his due process rights by pressuring his brother to provide false testimony against him. The district court denied the motion, and Mr. Prevatte did not appeal.

In November 1999, while incarcerated at a federal detention center in California, Mr. Prevatte filed a motion for habeas relief pursuant to 28 U.S.C. § 2241. In his motion, Mr. Prevatte challenged his conviction on the basis that the Government had not established a sufficient interstate nexus. The United States District Court for the Central District of California, however, dismissed Mr. Prevatte's motion for lack of subject matter jurisdiction. The court noted that Mr. Prevatte did not challenge the "manner, location or conditions[ ] of the execution of a sentence," but instead contested the legality of his conviction and sentence; consequently, his motion must be brought with the sentencing court under 28 U.S.C. § 2255. Motion to Recall Mandate, Ex.4 at 2-3. The court further quoted § 2255 for the proposition that a petitioner may not seek relief under § 2241 " 'if it appears the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.' " *Id.* at 3 (quoting 28 U.S.C. § 2255). According to that court, "[t]he petitioner has not shown that a remedy pursuant to § 2255 is inadequate or ineffective to test the legality of his detention. Thus, the court must dismiss the present petition for lack of subject matter jurisdiction." *Id.*

The Ninth Circuit affirmed the dismissal, but on different grounds. It stated:

> The challenged conviction and sentence at issue here were imposed by the Northern District of Indiana. At the time Prevatte filed his section 2241 petition, how-

ever, he was incarcerated in the Central District of California. Moreover, before the district court ruled on his petition, Prevatte was then transferred to a federal prison in Florence, Colorado, where he is currently incarcerated. Because Prevatte's § 2241 petition effectively challenges the legality of his underlying conviction and invokes the savings clause under section 2255, the district court properly recognized that it was without jurisdiction.

Defendant's Three Supp. Exhibits, Ex.2 at 2. The Ninth Circuit then remanded "for the limited purpose of determining if the interests of justice require transfer of Prevatte's section 2241 claim, challenging his conviction and sentence under 18 U.S.C. § 844(i), to the district court in Colorado." *Id.* at 3. On July 23, 2002, the Central District of California denied transfer and dismissed Mr. Prevatte's § 2241 motion.

On December 27, 2001, Mr. Prevatte filed a document with this court entitled "Appellant Prevatte's Motion to Recall Mandate Pursuant to Court's Inherent Power to Prevent A Manifest Miscarriage of Justice." In his motion, Mr. Prevatte asks this court to recall its mandates, the last of which was issued in October 1995 after his second appeal. Mr. Prevatte submits that *Jones v. United States*, 529 U.S. 848 (2000), renders him actually innocent of the crime for which he was convicted. Mr. Prevatte maintains that, because the only interstate connection established at his trial was the injury to a home that received interstate natural gas, and because *Jones* held that a private residence that received interstate natural gas was not "used" in commerce for purposes of 18 U.S.C. § 844(i), he should be "set at liberty and discharged from custody." Motion to Recall Mandate at 2.

## II

## DISCUSSION

### A.  Entitlement to Relief Under 28 U.S.C. § 2255

#### 1.

Mr. Prevatte submits that this court has the inherent authority to recall its mandate to prevent a miscarriage of justice. However, we previously have determined that motions, such as the one presented by Mr. Prevatte, cannot be employed to evade the successive petition restrictions of 28 U.S.C. § 2255. *See Gray-Bey v. United States*, 209 F.3d 986, 988 (7th Cir. 2000). In *Gray-Bey*, the petitioner had sought and was denied habeas relief under § 2255. Gray-Bey then sought relief in the district of his incarceration by way of 28 U.S.C. § 2241. The district court, however, characterized Gray-Bey's motion as an attempt to circumvent the successive filing rules of § 2255 and transferred the case to this court for disposition. While the matter was pending, Gray-Bey's counsel filed a motion to recall the mandate of the first disposition of Gray-Bey's habeas appeal. "By recalling the mandate in the prior case, counsel contended, we could address the merits of Gray-Bey's . . . argument without regard to § 2244(b) and 2255 ¶ 8." *Id.* at 988. This court rejected the argument. Quoting the Supreme Court's decision in *Calderon v. Thompson*, 523 U.S. 538, 553 (1998), this court stated:

> "[A] prisoner's motion to recall the mandate on the basis of the merits of the underlying decision can be regarded as a second or successive application for purposes of § 2244(b). Otherwise, petitioners could evade the bar against relitigation of claims presented in a prior application, § 2244(b)(1), or the bar against litigation of claims not presented in a prior application, § 2244(b)(2). If the court grants such a motion its action is subject to [the] AEDPA."

*Gray-Bey*, 209 F.3d at 988. Consequently, "[b]ecause it would be proper to recall the mandate only if it is proper to authorize a second or successive collateral attack," this court stated, "the motion is pointless," and we considered the merits of Gray-Bey's successive petition under § 2255. *Id.* Following *Gray-Bey* and *Calderon*, we may grant Mr. Prevatte's motion only if he is entitled to review and relief pursuant to 28 U.S.C. § 2255. Therefore, we turn to § 2255 to determine if Mr. Prevatte has met the requirements for filing a successive petition.[1]

### 2.

According to 28 U.S.C. § 2255:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—

> > (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> > (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

---

[1] Mr. Prevatte concedes that he cannot employ § 2255 as a means of gaining review in this court. *See* Motion to Recall Mandate at 8. However, we undertake this analysis as part of a more searching inquiry to determine whether and how § 2255 is an inadequate mechanism for Mr. Prevatte to test the validity of his confinement. This latter inquiry is necessary if we are to evaluate whether 28 U.S.C. § 2241 constitutes a viable alternative.

28 U.S.C. § 2255 ¶ 8. Mr. Prevatte does not base his motion on a claim of new evidence. Consequently, Mr. Prevatte must demonstrate that he has a right to relief because of a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court. We look then to the Supreme Court's decision in *Jones v. United States*, 529 U.S. 848 (2000), to determine whether this requirement is met in this case.

In *Jones*, the Supreme Court addressed the issue of "[w]hether, in light of *United States v. Lopez* . . . and the interpretive rule that constitutionally doubtful constructions should be avoided . . ., 18 U.S.C. § 844(i) applies to the arson of a private residence; and if so, whether its application to the private residence in the present case is constitutional?" *Id.* at 852 (internal quotation marks and citations omitted). The Court observed that, in enacting § 844(i), "Congress 'require[d] that the damaged or destroyed property must itself have been used in commerce or in an activity affecting commerce.' " *Id.* at 854 (quoting *United States v. Mennuti*, 639 F.2d 107, 110 (2d Cir. 1981)). The Supreme Court focused its inquiry on " 'the function of the building itself, and . . . whether that function affects interstate commerce.' " *Id.* at 854 (quoting *Mennuti*, 639 F.2d at 110). The Court noted that the term "use" is not equivalent to "affect"; instead, the "qualification is more sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." *Id.* at 855. A purely residential dwelling, it determined, is not "used" in commerce in this manner. *Id.* at 856.

In Part III of its opinion, the Court discussed how this construction was "in harmony with the guiding principle that 'where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional ques-

tions arise and by the other of which such questions are avoided, our duty is to adopt the latter.' " *Id.* at 857 (quoting *United States ex rel. Attorney Gen. v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909)). The Supreme Court then concluded that "[g]iven the concerns brought to the fore in *Lopez,* it is appropriate to avoid the constitutional question that would arise were we to read § 844(i) to render the 'traditionally local criminal conduct' in which petitioner *Jones* engaged 'a matter for federal enforcement.' " *Id.* at 858 (quoting *United States v. Bass,* 404 U.S. 336, 350 (1971)).

*Jones* therefore interpreted § 844(i) not to cover owner-occupied dwellings because these structures are not "used" in interstate commerce as that term was employed by Congress. Furthermore, this interpretation avoided potential constitutional issues that could have arisen if the statute covered purely local concerns such as arson.

We believe that it is clear from the language and structure of the Supreme Court's opinion that the holding in *Jones* does not fit the requirements for § 2255(b). First, the holding does not state a rule of constitutional law. In the opinion, the Supreme Court parsed and determined the meaning of the statutory language in § 844(i); it therefore did not need to address the issue of constitutionality. *See Jones,* 529 U.S. at 857-58. Consequently, Mr. Prevatte's claim for relief is not based upon a new rule of constitutional law, and he is not entitled to pursue a second habeas petition under § 2255.

### B.   Alternate Relief Under 28 U.S.C. § 2241

#### 1.

The fact that Mr. Prevatte may not pursue a second § 2255 petition does not necessarily foreclose all relief. Section

2255 contains a "savings clause" for petitioners who may be barred by the successive petition requirements contained in the statute. The savings clause of § 2255 provides:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is *inadequate or ineffective* to test the legality of his detention.

28 U.S.C. § 2255 ¶ 5 (emphasis added). We previously have discussed the relationship between the savings clause of § 2255 and the federal habeas statute, 28 U.S.C. § 2241:

> In general, federal prisoners who wish to attack the validity of their convictions or sentences are required to proceed under § 2255. Furthermore, in the overwhelming majority of cases § 2255 specifically prohibits prisoners from circumventing § 2255 and challenging their convictions or sentences through a habeas petition under § 2241. There is, however, a recognition in the statute that it will not apply in a narrow class of cases. This is the so-called "savings clause" of § 2255, which allows prisoners to bring § 2241 petitions if they can show that the § 2255 remedy "is inadequate or ineffective to test the legality of [the prisoner's] detention."

*Garza v. Lappin*, 253 F.3d 918, 921 (7th Cir. 2001) (quoting 28 U.S.C. § 2255). Thus, Mr. Prevatte may be able to seek habeas relief pursuant to § 2241, if § 2255 is considered "inadequate" or "ineffective" as those terms are employed in § 2255's savings clause.

**2.**

We are not the court with jurisdiction to consider a § 2241 petition on Mr. Prevatte's behalf.[2] Therefore, as we recognized in a similar context in *Gray-Bey*, the decision as to whether § 2255 is "inadequate" and "ineffective" is "not ours to make." *Gray-Bey*, 209 F.3d at 989. Nevertheless, because we do have the authority to transfer the matter before us to the court having jurisdiction over a § 2241 petition,[3] we must make a preliminary inquiry as to whether the case before us is a sufficiently meritorious matter to warrant such a transfer "in the interest of justice." 28 U.S.C. § 1631.

In our view, a § 2241 petition brought on the basis of the papers now before us could not be considered frivolous. In *In re Davenport*, 147 F.3d 605 (7th Cir. 1998), we considered the meaning of "inadequacy" for purposes of § 2255. There, we stated that "[a] procedure for post-conviction relief can fairly be termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a non-existent offense." *Id.* at 611. In *Davenport*, one of the peti-

---

[2] A § 2241 petition, even when sought by way of the savings clause of § 2255, must be filed "in the district of confinement . . ., not the district where the case was tried." *Garza v. Lappin*, 253 F.3d 918, 921 (7th Cir. 2001).

[3] We have the authority to transfer Mr. Prevatte's action "to any other such court in which the action or appeal could have been brought at the time it was filed or noticed . . . ." 28 U.S.C. § 1631; *see also Gray-Bey*, 209 F.3d at 989 (invoking § 1631 transfer authority for a habeas petition under § 2241). At all times relevant to this motion, Mr. Prevatte has been incarcerated in Colorado.

tioners, Nichols, sought relief from his conviction for the use
of a firearm in the commission of a drug offense under 18
U.S.C. § 924(c). Nichols appealed his conviction and, after
his conviction was affirmed, sought relief under § 2255
on the basis of ineffective assistance of counsel, which
was denied. Subsequently, the Supreme Court decided
*Bailey v. United States*, 516 U.S. 137 (1995), in which it
held that "use" for purposes of 18 U.S.C. § 924(c) "does
not include mere possession, as had been the law of this
circuit when Nichols was convicted." *Davenport*, 147 F.3d
at 607. Nichols then filed another motion for post-convic-
tion relief styled as an application for a writ of coram nobis
pursuant to 28 U.S.C. § 1651. The district court rejected
the motion as an attempt to circumvent the successive pe-
tition limitations of § 2255. We then were faced with the is-
sue of whether § 2255 was inadequate for Nichols to test
the legality of his confinement:

> The question is whether in these circumstances, the
> remedy created by section 2255 can be thought adequate
> to enable the prisoner to test the legality of his deten-
> tion. . . . [W]e think the answer is no. Nichols could not
> use a first motion under the section to obtain relief on a
> basis not yet established by law. He could not use a
> second or other successive motion to obtain that re-
> lief because the basis on which he seeks relief is neith-
> er newly discovered evidence nor a new rule of consti-
> tutional law. It is true that his claim would wash out if
> the Supreme Court had made the statutory definition
> that it adopted in *Bailey* applicable only to future cases,
> for then Nichols would not have been convicted for a
> nonexistent crime; but the Court, consistent with its
> usual practice did not do this, and so he has a claim that
> he is indeed being held in prison for a nonexistent
> crime. It is a claim that he could at no time present in
> a motion under section 2255, nor earlier in his direct
> appeal.

*Id.* at 610 (internal citations omitted). In conclusion, we stated that "[a] federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion." *Id.* at 611. We added three qualifications to this general rule:

> The first is that the change of law has to have been made retroactive by the Supreme Court, as the Court has now done for *Bailey* errors by its *Bousley* decision. The second is that it must be a change that eludes the permission in section 2255 for successive motions; if it does not, if therefore the prisoner is not barred from filing a successive such motion, then his 2255 remedy is not inadequate and he cannot apply for habeas corpus. Third, "change in law" is not to be equated to a difference between the law in the circuit in which the prisoner was sentenced and the law in the circuit in which he is incarcerated.

*Id.* at 611-12.

Similar to Nichols, here Mr. Prevatte has not had an opportunity to obtain judicial correction of a potential fundamental defect in his conviction; *Jones* was handed down after he had filed his initial § 2255 motion. Furthermore, as demonstrated above, the *Jones* decision is "a change that eludes the permission in section 2255 for successive motions," *Davenport*, 147 F.3d at 611, because, like *Bailey*, it involves statutory, not constitutional, interpretation. Additionally, Mr. Prevatte does not base his claim for relief on the "difference between the law in the circuit in which the prisoner was sentenced and the law in the circuit in which he is incarcerated," *id.* at 612; the change on which Mr. Prevatte relies is a function of the Supreme Court's decision in *Jones.*

The only potential procedural stumbling block to Mr. Prevatte's presentation of his claim under § 2241 is *Davenport*'s requirement that "the change of law has to have been made retroactive by the Supreme Court, as the Court has now done for *Bailey* errors by its *Bousley* decision." *Id.* at 611. However, it is not at all clear that this requirement would be an insuperable impediment for relief. Even in this circuit, the scope of this requirement is uncertain;[4] in other circuits, statutory cases such as this one have been treated as not involving a retroactivity issue. Rather, the courts have taken the view that a decision of the Supreme Court that gives a federal criminal statute a narrower reading than it previously had been given necessarily raises the possibility that an individual previously convicted under the broader reading now stands convicted of activity that Congress never intended to make criminal. The Chief Justice's analysis in *Bousley* is the foundation of this reasoning:

> This distinction between substance and procedure is an important one in the habeas context. The *Teague* doctrine is founded on the notion that one of the "principal functions of habeas corpus [is] 'to assure that no man has been incarcerated under a procedure which creates an impermissibly large risk that the innocent will be convicted.' " [*Teague v. Lane,*] 489 U.S. [289,] at 312 (quoting *Desist v. United States,* 394 U.S. 244, 262 (1969)). Consequently, unless a new rule of criminal procedure is of such a nature that "without [it] the likelihood of an accurate conviction is seriously dimin-

---

[4] *In re Davenport,* 147 F.3d 605 (7th Cir. 1998), itself does not make clear whether it regards *Bousley* as necessarily limited to the statute-specific context of firearms offenses under 18 U.S.C. § 924 or applicable as well to other statutes. This court's later decision in *Garza* makes no mention of the requirement.

ished," 489 U.S., at 313, there is no reason to apply the rule retroactively on habeas review. By contrast, decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct " 'beyond the power of the criminal law-making authority to proscribe,' " *id.*, at 311 (quoting *Mackey* [*v. United States*, 401 U.S. 667, 692 (1971) (Harlan, J., concurring in part and dissenting in part)]), necessarily carry a significant risk that a defendant stands convicted of "an act that the law does not make criminal." *Davis v. United States*, 417 U.S. 333, 346 (1974). For under our federal system it is only Congress, and not the courts, which can make conduct criminal. *United States v. Lanier*, 520 U.S. 259, 267-68, n.6 (1997); *United States v. Hudson*, 7 Cranch 32 (1812). Accordingly, it would be inconsistent with the doctrinal underpinnings of habeas review to preclude petitioner from relying on our decision in *Bailey* in support of his claim that his guilty plea was constitutionally invalid.

*Bousley*, 523 U.S. at 620. For instance, in *United States v. Ryan*, 227 F.3d 1058 (8th Cir. 2000), the Eighth Circuit relied upon *Bousley* and determined that, unlike constitutionally based procedural rules, when the Supreme Court narrows the interpretation of a criminal statute enacted by Congress, that interpretation may be applied retroactively to § 2255 claims for post-conviction relief. Notably, the Eighth Circuit, dealing with an initial application for post-conviction relief, applied this reasoning to the Supreme Court's decision in *Jones* and held that *Jones'* narrow reading of § 844(i) may be invoked by prisoners seeking post-conviction relief under § 2255, even though the Supreme Court had not declared specifically that *Jones* was retroactive.

Similarly the Tenth Circuit allowed a prisoner to invoke the Supreme Court's decision in *Bailey v. United*

*States*, 516 U.S. 137 (1995), as a basis for a collateral attack under § 2255 prior to the Court's *Bousley* decision which rendered *Bailey* retroactive. *United States v. Barnhardt*, 93 F.3d 706 (10th Cir. 1995). The Tenth Circuit understood the Supreme Court's decision in *Davis v. United States*, 417 U.S. 333 (1974), to hold that "a petitioner collaterally attacking his conviction should be given the benefit of case law decided after his conviction when the conviction was for an act that the law does not make criminal." *Barnhardt*, 93 F.3d at 709 (internal citations and quotation marks omitted). Consequently, it concluded:

> *Bailey* establishes a new non-constitutional rule of substantive law which may produce a different result under the facts of this case than that dictated by prior law. In other words, actions that were criminal pre-*Bailey* may no longer be such. Therefore, we hold that *Bailey* applies retroactively to convictions under 18 U.S.C. § 924(c)(1).

*Id.*

The courts of the Tenth Circuit, the circuit in which Mr. Prevatte now must seek § 2241 relief, might well apply the similar reasoning in this case and determine that, because the Supreme Court's decision in *Jones* presents the possibility that Mr. Prevatte has been convicted of a crime for activity that Congress did not intend to make criminal, he is entitled to bring a petition under § 2241. Indeed, following *Barnhardt* and *Ryan*, one district court in the Tenth Circuit already has taken this approach. *See United States v. Tush*, 151 F. Supp. 2d 1246, 1249-50 (D. Kan. 2001).[5]

_____

[5] The district court determined, however, that Tush was not entitled to relief because he had admitted in his plea agreement

(continued...)

**Conclusion**

Mr. Prevatte has brought a non-frivolous challenge to his conviction by alleging that, due to an intervening decision of the Supreme Court of the United States that narrows significantly the statute under which he was convicted, he stands convicted of having committed an act that Congress did not intend to criminalize. It also appears that a court with jurisdiction over the § 2241 petition would determine that there was no procedural impediment to considering the petition on the merits. Accordingly, we believe that the interests of justice require that we transfer the matter before us to the United States District Court for the District of Colorado for consideration as a petition for a writ of habeas corpus under § 2241. Because we do not have jurisdiction to consider a § 2241 motion based on *Jones*, we express no opinion on the merits of Mr. Prevatte's claim that *Jones* negates his violation of § 844(i) or entitles him to immediate release.

TRANSFERRED

A true Copy:

    Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

---

[5] (...continued)
that the evidence would show that the targeted church was used in an activity affecting interstate commerce. *See United States v. Tush*, 151 F. Supp. 2d 1246, 1253-54 (D. Kan. 2001), *aff'd*, 287 F.3d 1294 (10th Cir. 2002).