**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1531
_____

GABRIEL J. JENNINGS,
                              Appellant

v.

WARDEN FRANCISCO J. QUINTANA;
U.S. ATTORNEY GENERAL
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 1-08-cv-00322)
District Judge:  Honorable Sean J. McLaughlin
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 14, 2014
Before: RENDELL, GREENAWAY, JR. and ALDISERT, Circuit Judges

(Opinion filed: April 17, 2014)
_____

OPINION
_____

PER CURIAM

Gabriel Jennings, proceeding pro se, appeals from an order of the United States

District Court for the Western District of Pennsylvania denying his petition for a writ of

habeas corpus filed pursuant to 28 U.S.C. § 2241.  For the following reasons, we will

affirm.

In 1990, Gabriel Jennings and 13 co-defendants were charged in a multi-count indictment with a host of crimes related to their participation in an organization that distributed crack cocaine and other drugs in Philadelphia. One of those counts charged that, on or around December 29, 1988, Jennings and several co-defendants used fire and explosives with the intent to damage or destroy "a building used in an activity affecting interstate commerce, that is 5801 Brush Road, which was used in the conspiracy to distribute cocaine base charged in Count One of the Indictment." 18 U.S.C. § 844(i). That address was the home of Nathaniel Gore, who was charged with, but acquitted of, making a house available for drug distribution. See 21 U.S.C. 856(a)(2).

A jury in the United States District Court for the Eastern District of Pennsylvania found Jennings guilty of arson, conspiracy, operating a continuing criminal enterprise, a RICO violation, as well as firearms and drug-related offenses. The trial court subsequently sentenced Jennings to 432 months of imprisonment – 60 months for the firearm counts and 372 months for the remaining counts. We affirmed the convictions and sentence on direct appeal. Jennings's first 28 U.S.C. § 2255 motion was denied in 1993.[1]

---

[1] In February 1997, Jennings obtained our permission to file a second or successive § 2255 motion. Later that year, the trial court granted his new § 2255 motion in part, vacating his firearm convictions in light of Bailey v. United States, 516 U.S. 137 (1995), and vacating his conviction for engaging in a continuing criminal enterprise in light of Rutledge v. United States, 517 U.S. 292 (1996). Only the former vacatur affected the duration of his sentence, leaving him with a total prison term of 372 months.

In May 2000, the Supreme Court decided Jones v. United States, 529 U.S. 848 (2000), which interpreted an aspect of the federal arson statute under which Jennings had been convicted. The Supreme Court held that "an owner-occupied residence not used for any commercial purpose does not qualify as property 'used in' commerce or commerce-affecting activity; arson of such a dwelling, therefore, is not subject to federal prosecution under [18 U.S.C. § 844(i)]." Jones, 529 U.S. at 850-51. Relying on Jones, Jennings filed this § 2241 petition, arguing that, at the time of the arson in December 1988, Gore had converted the home back into an "exclusive owner-occupied dwelling" by refusing to allow the drug sales to continue out of his basement.[2] Therefore, according to Jennings, because the property was merely Gore's private residence, he was convicted of conduct that is no longer deemed criminal. A Magistrate Judge recommended that the petition be denied. In particular, the Magistrate Judge concluded that Jennings was not actually innocent of arson under § 844(i) as interpreted by the Supreme Court in Jones because "there is evidence from which a reasonable juror could conclude that Gore's home was

_____

[2] This was not Jennings' first attempt to obtain relief under Jones. Over the course of many years, he cited Jones in several unsuccessful § 2241 petitions and applications to file second or successive § 2255 motions. See Jennings v. Holt, 326 F. App'x 628, 629-30 (3d Cir. 2009) (describing Jennings' efforts to seek relief under Jones). After he filed this petition, the parties consented to proceed before a Magistrate Judge. 28 U.S.C. § 636(c)(1). The Magistrate Judge denied the petition, and Jennings appealed. The Government filed a motion to remand on the ground that "where a proceeding challenges the legality of a criminal conviction (as in this case), it is not a 'civil matter' that may be delegated to a Magistrate Judge for entry of a final judgment." We granted the Government's motion. Jennings v. Quintana, C.A. No. 11-2182 (order entered May 2, 2012).

used as a location to sell illegal drugs and, therefore, was not solely a private residence used only for everyday family living." Over Jennings' objections, the District Court adopted the Magistrate Judge's Report and Recommendation, and denied the § 2241 petition. Jennings appealed.[3]

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 2253(a). We exercise plenary review over the District Court's legal conclusions and review its factual findings for clear error. See Vega v. United States, 493 F.3d 310, 314 (3d Cir. 2007).

A motion filed under 28 U.S.C. § 2255 in the sentencing court is the presumptive means for a federal prisoner to challenge the validity of a conviction or sentence. See Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002). A petitioner can seek relief under § 2241 only if the remedy provided by § 2255 is "inadequate" or "ineffective" to test the legality of his detention. § 2255(e); In re Dorsainvil, 119 F.3d 245, 249-51 (3d Cir. 1997). "We have held that a § 2255 petition is 'inadequate' when a petitioner asserts a claim of 'actual innocence' on the theory that 'he is being detained for conduct that has subsequently been rendered non-criminal by an intervening Supreme Court decision' and our own precedent construing an intervening Supreme Court decision, but is otherwise barred from challenging the legality of the conviction under § 2255." United States v. Tyler, 732 F.3d 241, 246 (3d Cir. 2013) (quoting Dorsainvil, 119 F.3d at 252). To

---

[3] Jennings has filed a "Request for a Certificate of Appealability," although one is not required. Burkey v. Marberry, 556 F.3d 142, 146 (3d Cir. 2009).

establish actual innocence, a petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998); Tyler, 732 F.3d at 246 (noting that the Bousley standard applies to actual innocence claims brought under § 2241).

We conclude, and the Government agrees, that Jennings' claim of actual innocence under Jones falls within the scope of § 2255's savings clause. See Martin v. Perez, 319 F.3d 799, 804-05 (6th Cir. 2003) (holding that appellant's Jones claim triggered § 2255's savings clause); United States v. Prevatte, 300 F.3d 792, 800-02 (7th Cir. 2002) (transferring § 2241 petition raising Jones claim to the proper court, and noting that it "appears that a court with jurisdiction over the § 2241 petition would determine that there was no procedural impediment to considering the petition on the merits"). Jennings must still establish, however, that he is actually innocent of conduct that has subsequently been rendered non-criminal by the Supreme Court's interpretation of § 844(i) in Jones.

Section 844(i) applies only to property that is "used" in interstate commerce or in an activity that affects interstate commerce. As noted above, the Supreme Court held that the "used in" qualification "is most sensibly read to mean *active employment for commercial purposes*, and not merely a passive, passing, or past connection to commerce . . . ." Jones, 529 U.S. at 855 (emphasis added). The "proper inquiry . . . 'is into the function of the building itself, and then a determination of whether that function affects interstate commerce.'" Id. at 854 (quoting United States v. Ryan, 9 F.3d 660, 675 (8th

5

Cir. 1993)). Thus, "an owner-occupied residence not used for any commercial purpose does not qualify as property 'used in' commerce or commerce-affecting activity[.]" Jones, 529 U.S. at 850-51.

Jennings acknowledges that the sale of illegal drugs from a home can qualify it as being used in an activity that affects interstate commerce. See United States v. Orozco, 98 F.3d 105, 107 (3d Cir. 1996) (recognizing that "[a] large interstate market exists for illegal drugs."); United States v. Barton, 647 F.2d 224, 232 (2d Cir. 1981) (holding that an illegal gambling club run in a private home was an activity affecting interstate commerce). Jennings also does not credibly dispute that he participated in the sale of drugs out of the basement of Gore's home beginning in the fall of 1988.[4] He argues, however, that, at the time of the arson on December 29, 1988, Gore had converted the home back into an "exclusive owner-occupied dwelling" by "refus[ing] to allow use of his house for continued drug sales." By January 1989, however, the sale of drugs out of Gore's basement had resumed.

The temporary cessation of commercial activity at a property does not necessarily remove it from interstate commerce. See, e.g., United States v. Iodice, 525 F.3d 179, 184

---

[4] In his brief, Jennings states that "trial evidence from several witnesses supported the theory that drugs were being distributed by Jennings and his cohorts, in and around the target location." Appellant's Br., 7. In his reply, however, Jennings claims that the "evidence . . . seriously contradicts and categorically refutes any drug activity at Gore's residence prior to the arson." Appellant's Reply, 2. We conclude that the evidence, including testimony from two of Jennings' co-conspirators, clearly establishes that Jennings was involved in drug sales from Gore's basement in latter half of 1988.

(2d Cir. 2008) (recognizing that "[o]ur sister circuits have concluded that § 844(i) applies to temporarily vacant buildings as long as there was evidence at trial of sufficiently definite plans to return the property to the stream of commerce."). We have held that "'once the business nature of the property at issue is established, courts will presume, absent indicia of an intention to permanently remove the property from the stream of commerce, that the requisite [interstate commerce] nexus' exists." United States v. Williams, 299 F.3d 250, 256 (3d Cir. 2002) (quoting United States v. Gaydos, 108 F.3d 505, 510 (3d Cir. 1997)).

Here, the evidence does not indicate an intention to permanently remove Gore's home from the stream of commerce. To the contrary, the sale of drugs from Gore's basement stopped shortly before the fire, and resumed approximately one month later. Cf. Martin v. United States, 333 F.3d 819, 821-22 (7th Cir. 2003) (holding that evidence did not support Appellant's "claim that he had no intention of reletting the apartments in his building" because, inter alia, "the last tenant to live in [the] apartment building quit paying rent only two months before the fire"). In particular, a police officer testified at Jennings' trial that he witnessed several drug sales occur from Gore's basement on January 30, 1989. Jennings argues that there is no evidence that the post-arson drug sales were related to him.[5] But Jennings has failed to provide any support for the theory that

---

[5] We note, however, that Charles Winfrey, who first became involved with Jennings' organization in approximately December 1988, testified that he sold drugs from Gore's house for approximately three months.

7

the resumption of commercial activity must be connected in such a way to the use of the property, pre-arson, in interstate commerce. Moreover, neither the fact that Gore was acquitted in a separate trial of making the house available for drug sales nor Gore's assertion that he had been forced into the arrangement takes the property outside the scope of § 844(i) so as to make Jennings actually innocent. See United States v. Tolliver, 730 F.3d 1216, 1222 (10th Cir. 2013) ("declin[ing] to inquire into Defendant's motives for renting . . . property" which was burned); United States v. Veysey, 334 F.3d 600, 603 (7th Cir. 2003) (refusing to draw a distinction between those property owners who are in the business of renting and "accidental renter[s]" who "didn't *want* to be in the real estate rental business[,]" noting that an inquir[y] in every case into the motives for renting . . . would complicate decision making without offsetting gain.").

In sum, although Jennings may pursue his claim under § 2241, we conclude that he failed to demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him of arson under § 844(i) as interpreted in Jones.[6] Accordingly, we will affirm the District Court's judgment.

---

[6] Jennings' arguments that the trial court failed to instruct the jury consistently with Jones and lacked subject matter jurisdiction over the arson count – which are premised on his contention that the property was not used in interstate commerce – also must fail.