**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Adrian L. COOPER, Defendant–Appellant.**

**No. 93–3492.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 12, 1994.

Decided Nov. 3, 1994.

Barry Rand Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, James Porter, Asst. U.S. Atty. (argued), Margaret Mary Robertie, Crim. Div., Fairview Heights, IL, for U.S.

Paul M. Storment, III (argued), Belleville, IL, for defendant-appellant.

Before CUMMINGS, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Adrian Cooper was convicted by a jury of conspiring to distribute and to possess with intent to distribute over 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2. The district court sentenced Cooper to a mandatory term of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A)(iii). On appeal, Cooper challenges the sufficiency of the evidence to support his conviction and the imposition of a mandatory life sentence. We affirm.

## I.

On October 2, 1992, at approximately 7:00 a.m., Special Agent Carl Hicks of the Drug Enforcement Agency (DEA) and Officer Ginger Robertson of the Springfield, Missouri Police Department conducted a drug interdiction examination of a Greyhound bus which arrived at the Springfield, Missouri bus station from Los Angeles, California. After allowing departing passengers to leave the bus, Agent Hicks talked to the persons remaining on the bus and was able to account for the ownership of all but two bags on the overhead luggage rack: a white plastic shopping bag and a black Totech travel bag. Both bags were located near defendant Adrian Cooper's head. When Agent Hicks inquired about the bags, Cooper acknowledged that he owned the white plastic shopping bag. Agent Hicks asked Cooper whether the Totech travel bag, which was directly adjacent to the white plastic shopping bag, belonged to Cooper. Cooper replied that the bag did not belong to him. Agent Hicks brought the black bag down from the overhead rack, placed it in front of Cooper, and asked Cooper if he was sure the bag was not his. Cooper reiterated that the bag did not

belong to him. Agent Hicks advised Cooper that if the bag was his, he could refuse to consent to a search of the bag and request Agent Hicks to obtain a search warrant. Cooper continued to deny ownership of the bag. Once Agent Hicks was sure that the bag did not belong to anyone else on the bus, he searched the bag and found a small amount of marijuana, a Foot Locker bag, and 836 grams of cocaine powder and 2.424 grams of crack cocaine wrapped up in a Brooklyn Dodgers baseball shirt. Agent Hicks then arrested Cooper, who was released from the Springfield City jail the same day to enable the officers to expand their investigation. In the course of the investigation, the officers contacted a woman named Tasha Demery, whose telephone number was in Cooper's wallet. The officers showed Demery, who lived in California, a photograph of the Brooklyn Dodgers baseball shirt found in the black Totech travel bag. Demery identified the shirt as being similar to one worn by Cooper in California.

On January 21, 1993, Cooper was arrested again. At the time of the arrest, Cooper was in possession of a customized GMC "Jimmy" truck, nearly $6,800 in cash, and $6,500 in jewelry.

On March 17, 1993, a grand jury issued a one-count indictment against Cooper. The indictment charged Cooper and other unindicted co-conspirators with conspiracy to distribute and to possess with intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2.

On April 19, 1993, the government notified Cooper and the district court that it was seeking an enhanced sentence for Cooper based on four prior felony convictions (three drug offenses and one weapons offense). Cooper did not challenge the use of these convictions.

On July 26, 1993, Cooper proceeded to a three-day jury trial. The government presented its case against Cooper mainly through the testimony of twelve of Cooper's associates in the cocaine-trafficking business: Donald Roberts, Don McCall, Adrian Graham, Fred Tillman, Eddie Freeman, Marwin

Coney, Henry Carpenter, Bobby Commons, Timothy Cook, Jarvis Campbell, Fred Jones, and Marius Fair. Most of these witnesses had seen Cooper either purchase or sell crack cocaine.

Donald Roberts testified at trial that he had known Cooper for eight years. Roberts saw Cooper with crack cocaine in March 1992. At that time, Cooper offered to sell Roberts some crack, but Roberts declined. Don McCall testified that in March 1992 he sold Cooper three ounces of crack cocaine and two ounces of cocaine powder. Adrian Graham testified that he made at least six purchases of one-half ounce quantities of crack cocaine from Cooper during the spring and summer of 1992. Fred Tillman testified that in May or June 1992 he saw Cooper with at least one ounce of crack cocaine which Cooper offered to sell to him. Tillman further testified that in November 1992 Cooper told Tillman that he was caught with a "key" on a bus from California but that he had been released. Eddie Freeman testified that he sold drugs for Cooper and that he kept a gun for Cooper. Marwin Coney testified that he sold one-sixteenth of an ounce quantities of crack cocaine for Cooper on a front during a six-month period beginning in April 1992. Henry Carpenter testified about dealing at least six $20 rocks of crack cocaine for Cooper over a two-year period, as well as being involved in a one-quarter kilogram of cocaine deal with Cooper in the spring of 1992. Carpenter also testified that he heard

Cooper talk about having cocaine taken from him on a Greyhound bus. Bobby Commons testified that in the spring of 1992 he sold at least one ounce of crack cocaine fronted to him by Cooper and described his drug dealing activities with Cooper. Timothy Cook testified that in June or July 1992 he saw Cooper with "golf ball-sized" pieces of crack cocaine. Jarvis Campbell testified that he had known Cooper for three or four years, and that in 1992 he twice sold crack cocaine that Cooper fronted. The first deal involved one-sixteenth of an ounce, while the second involved a quarter of an ounce. Fred Jones testified that he not only sold drugs to Cooper but that he also had purchased two ounces of cocaine from Cooper. Jones further testified that Cooper spoke to him about flying to California to purchase a kilogram of cocaine, getting stopped on a bus, and having the cocaine taken from him. Lastly, Marius Fair testified about sales he made on behalf of Cooper in one-sixteenth of an ounce quantities between June and November 1992.

At the conclusion of the trial, the jury was instructed that "[t]he defendant is charged with the crime of conspiracy to possess and to distribute cocaine. The defendant has denied that he is guilty of the charge." The jury found Cooper guilty as charged.

On September 28, 1993, the district court held a sentencing hearing. At the hearing, the government asked for imposition of the statutorily mandated life sentence contained in 21 U.S.C. § 841(b)(1)(A)(iii).[1] The court

---

1. Section 841, Prohibited acts A, provides, in relevant part:

Unlawful Acts

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

Penalties

(b) Except as otherwise provides in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows;

(1)(A) In the case of a violation of subsection (a) of this section involving—

* * * * * *

(iii) 50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

* * * * * *

If any person commits a violation of this subparagraph or of section 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence. For the purpose of this subparagraph, the term "felony drug offense" means an offense that is a felony under any provision of this title or any other Federal law that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances or a felony under any law of a State or a foreign country that prohibits or

continued the hearing sua sponte until October 8, 1993, to allow Cooper to brief the issue of the applicability of the mandatory life term.

At the sentencing hearing on October 8, 1993, the district court found a total offense level of 38, which consisted of a total drug quantity of at least 150 to 500 grams of cocaine base, U.S.S.G. § 2D1.1(a)(c)(5), plus a two-level adjustment for possessing a dangerous weapon, U.S.S.G. § 2D1.1(b)(1), and a two-level adjustment for being a leader in the offense, U.S.S.G. § 3B1.1(c); a Criminal History Category of VI; and a sentencing guideline range of 360 months to life. Cooper did not dispute any of these findings. The district court further found, that § 841(b)(1)(A)(iii)'s mandatory life term provision applied because over 50 grams of cocaine base were involved in the offense, and because Cooper had at least two prior drug felony convictions, the requisite number under the statute. Accordingly, the district court sentenced Cooper to life in prison, and Cooper appeals.

## II.

### A. Sufficiency of the Evidence

Cooper bears a heavy burden in challenging the sufficiency of the evidence regarding his participation in a conspiracy. *United States v. Burrell*, 963 F.2d 976, 987 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992). "We review all the evidence in the light most favorable to the government. If we find that any rational jury could have found the defendant guilty, the conviction will be affirmed." *Id.* We will not reweigh the evidence or evaluate witness credibility. *United States v. Cabello*, 16 F.3d 179, 181 (7th Cir.1994).

Cooper claims that the evidence was insufficient to support his conviction because (1) the drugs seized on the Greyhound bus were insufficiently linked to him to constitute an overt act in furtherance of the conspiracy; (2) the twelve government witnesses were biased against him and their testimony was unbelievable; and (3) his sister's testimony established that the jewelry, cash, and customized car were legitimately obtained and not the proceeds of the conspiracy. With regard to the first point, the government was not required to prove an overt act under the conspiracy statute, 21 U.S.C. § 846. *United States v. Ivory*, 11 F.3d 1411, 1415 (7th Cir.1993) (per curiam); *United States v. Sassi*, 966 F.2d 283, 284 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 509, 121 L.Ed.2d 444 (1992). The link between Cooper and the cocaine on the bus was sufficiently established by the proximity of the black Totech travel bag to Cooper's white plastic shopping bag on the overhead rack; the Brooklyn Dodgers baseball shirt found inside the travel bag identified as Cooper's shirt; and Cooper's statements to others about being stopped on a bus and having his cocaine taken from him. With respect to the second and third points, the jury simply chose to believe the government's witnesses and to disbelieve Cooper's sister, which was its prerogative.

### B. Applicability of the Mandatory Life Sentence Provision

Cooper argues, without citation to any authority, that the district court erred when it took the crack cocaine equivalencies used in calculating his base offense level under the Sentencing Guidelines and applied the mandatory life sentence provision of 21 U.S.C. § 841(b)(1)(A)(iii). According to Cooper, he should have been sentenced under 21 U.S.C. § 841(b)(1)(B)(ii)(II),[2] which applies to

---

restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances.

\* \* \* \* \* \*

21 U.S.C. §§ 841(a) & (b)(1)(A)(iii).

2. Section 841(b)(1)(B)(ii)(II) provides, in pertinent part:

(b) Except as otherwise provided in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

(1)(B) In the case of a violation of subsection (a) of this section involving—
(ii) 500 grams or more of a mixture or substance containing a detectable amount of—
(II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

\* \* \* \* \* \*

If any person commits such a violation after one or more prior convictions for an offense punishable under paragraph, or for a felony under any other provision of this subchapter or

offenses involving over 500 grams of cocaine powder, because the indictment, the jury instruction, and the count of conviction all charged him with conspiring to distribute and possess with intent to distribute cocaine and not crack.

In determining the amount of drugs attributable to a defendant for purposes of sentencing, the district court is not controlled by the type or quantity of drugs specified in either the indictment or count of conviction. U.S.S.G. § 2D1.1, comment. (n. 12); *United States v. Villarreal,* 977 F.2d 1077, 1080 (7th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1350, 122 L.Ed.2d 731 (1993); *United States v. Levy,* 955 F.2d 1098, 1106 (7th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 102, 121 L.Ed.2d 62 (1992). Rather, the court is required to consider types and quantities of drugs not specified in the indictment or count of conviction so long as they are "part of the same course of conduct or common scheme or plan." U.S.S.G. § 1B1.3(a)(2); *Villarreal,* 977 F.2d at 1080. The district court may consider evidence from the trial in determining types and quantities of drugs. *Levy,* 955 F.2d at 1106. The district court's determination that the uncharged drugs are part of the same conspiracy, whether it be pursuant to the enhancement provisions of § 841(b) or the Sentencing Guidelines,[3] is a finding of fact which will be overturned only if it is clearly erroneous. *United States v. Granados,* 962 F.2d 767, 770 (8th Cir.1992); *United States v. Lokey,* 945 F.2d 825, 839 (5th Cir.1991) (collecting cases); *see United States v. Herrera,* 948 F.2d 1046, 1048 (7th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1596, 118 L.Ed.2d 311 (1992) (district court's calculation of cocaine amount attributed to defen-

dant's relevant offense conduct is reviewed for clear error); *United States v. Guyton,* 36 F.3d 655, 663 (7th Cir.1994) (same). Cooper's failure to object to this factual finding means that the plain error rule applies. Fed. R.Crim.P. 52(b).

No error occurred here, plain or otherwise. The 50 grams of crack cocaine for which Cooper was sentenced was, without a doubt, part of the same conspiracy as that charged in the count of conviction. The evidence produced at trial established that virtually all of Cooper's business deals involved crack cocaine. *See United States v. Payne,* 940 F.2d 286, 293 (8th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991) (concluding that sentences were not unconstitutional because indictments failed to specify that crack cocaine would be included in calculating base offense levels; crack was part of the same cocaine conspiracy charged in the counts of conviction); *United States v. McCaskey,* 9 F.3d 368, 377 (5th Cir.1993) (per curiam), *cert. denied,* — U.S. ——, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994) (holding that due process was not violated by imposition of sentences based on true nature of defendants' conduct as involving cocaine base rather than cocaine hydrochloride as charged in indictment; defendants knew prior to sentencing that government's test revealed that cocaine base was involved, and plea agreement made no representation that defendants would be sentenced only according to the allegations in the indictment). Once the district court made its finding regarding the total amount of crack cocaine involved in the offense, it had no choice but to impose the mandatory life sentence given Cooper's prior felony convictions.[4] Although we have previ-

---

subchapter II of this chapter or other law of a State, the United States, or a foreign country relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment. . . .

\*    \*    \*    \*    \*    \*

21 U.S.C. § 841(b)(1)(B)(ii)(II).

**3.** *See Levy,* 955 F.2d at 1106 ("There appears to us to be no difference between the application of the enhancement provisions under § 841(b) and

the application of those enhancement factors found in the Sentencing Guidelines. 'The elements of § 841(b) . . . are to be considered by the court at sentencing after a jury finding of guilt.' ") (quoting *United States v. McNeese,* 901 F.2d 585, 605 (7th Cir.1990)).

**4.** This circuit has upheld the constitutionality of 841(b)(1)(A)(iii). *See United States v. Lawrence,* 951 F.2d 751, 754–55 (7th Cir.1991) (rejecting due process and equal protection challenges to enhanced penalties for cocaine base under 21 U.S.C. § 841(b) and U.S.S.G. § 2D1.1); *United States v. Smith,* 34 F.3d 514 (7th Cir.1994) (re-

ously noted the "self-evident" unfairness of sentencing a defendant based on uncharged criminal conduct, we have also observed that the Supreme Court has consistently upheld the practice. *See United States v. Beler,* 20 F.3d 1428, 1431 n. 1 (7th Cir.1994) (quoting *United States v. Corbin,* 998 F.2d 1377, 1384 (7th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1124, 127 L.Ed.2d 432 (1994)); *United States v. Ebbole,* 917 F.2d 1495, 1496 (7th Cir.1990); *United States v. Johnson,* 658 F.2d 1176, 1179 (7th Cir.1981).

■ We add that to the extent Cooper argues there was a fatal variance between the allegation in the indictment, which charged Cooper with conspiring to distribute cocaine, and the evidence at trial, which showed that Cooper dealt in crack cocaine, Cooper is not entitled to relief. The variance, if any, between cocaine and cocaine base was "plainly harmless" in the absence of evidence that it affected Cooper's substantial rights. *United States v. Pierce,* 893 F.2d 669, 676 (5th Cir.1990); *United States v. Wiley,* 29 F.3d 345, 352 (8th Cir.1994).

### III.

Substantial evidence supported Cooper's conspiracy conviction. A mandatory life sentence was properly imposed based on the total amount of crack cocaine involved in the conspiracy and Cooper's two prior felony convictions. The judgment of the district court is accordingly

AFFIRMED.

jecting Eighth Amendment challenge to the same   penalty provisions).