**Adrian L. COOPER, Petitioner–
Appellant,**

v.

**UNITED STATES of America,
Respondent–Appellee.**

No. 98–3826.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 4, 1999.

Decided Dec. 8, 1999.

Allen E. Shoenberger (argued), Loyola University School of Law, Chicago, IL, for Petitioner–Appellant.

James L. Porter (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Respondent–Appellee.

Before MANION, KANNE, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Adrian Cooper filed a postconviction petition pursuant to 28 U.S.C. § 2255 or alternatively under the All Writs Act, 28 U.S.C. § 1651, or the habeas corpus provision of 28 U.S.C. § 2241. The problem with the petition, which Cooper correctly perceived, is that it may run afoul of the 1–year period of limitations set out in § 2255. The district court dismissed the petition on that basis but also granted a certificate of appealability.

Cooper was convicted on serious drug charges in 1993 and sentenced to life imprisonment. He appealed his conviction and we affirmed it in 1994. *United States v. Cooper*, 39 F.3d 167 (7th Cir.1994). His present petition pursuant to § 2255 was not filed until December of 1997.

We will not repeat all the evidence that the jury heard at Cooper's trial. It is enough to say that the stash of crack cocaine which forms the basis for the charge against Cooper was in a black Totech travel bag found in the luggage rack over Cooper's seat on a Greyhound bus when it arrived in Springfield, Missouri, en route from Los Angeles, California. Cooper denied that the bag was his. There was, however, strong evidence which established to the jury's satisfaction—and to ours on direct appeal—that the bag did, in fact, belong to Cooper. We said:

> The link between Cooper and the cocaine on the bus was sufficiently established by the proximity of the black Totech travel bag to Cooper's white plastic shopping bag [which he acknowledged was his] on the overhead rack; the Brooklyn Dodgers baseball shirt found inside the travel bag identified as Cooper's shirt; and Cooper's statements

to others about being stopped on a bus and having his cocaine taken from him. 39 F.3d at 171.

The basis of Cooper's current petition for relief is that the bag also contained some hair, which he says was not his; he contends that recently developed methods of DNA testing would *prove* that the hair was not his. A related argument, growing out of the existence of the hair, is that his trial counsel was ineffective for not trying to show—even under more primitive testing methods—that the hair was not his. His problem is how to avoid the 1–year limitations period found in § 2255.

The revisions to § 2255 by the Antiterrorism and Effective Death Penalty Act (AEDPA) provide in part:

> A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

The AEDPA became effective in April 1996, and we have determined that no collateral attack filed by April 23, 1997, may be dismissed under these provisions. *O'Connor v. United States*, 133 F.3d 548 (7th Cir.1998). In other words, even if the conviction occurred earlier than the effective date of the Act, every petitioner gets the full year from the effective date in which to file. That is of no help to Cooper, however, because his petition was not filed until December 1997.

It is a little hard to pin down the exact basis on which Cooper contends that the merits of his petition should be reached. He argues that the time for filing his petition should run from the fourth option, the "date on which the facts supporting the claim ... could have been discovered through the exercise of due diligence." He claims that under that provision his petition would not be barred. Furthermore, the date which triggers the commencement of the 1–year period, he seems to say, has not yet arrived because the hair has not yet been tested by the new procedures, and "without the assistance of judicial process Mr. Cooper will be unable to do such testing." Under this theory, not only is the petition not time-barred, it is not even ripe.

Another argument Cooper makes, however, is that if his petition is barred under § 2255, our decision in *In re Davenport*, 147 F.3d 605 (1998), means that he should be allowed to proceed under either *coram nobis* (*see* 28 U.S.C. § 1651) or § 2241.

No matter what angle we approach it from, we cannot reach the merits of Cooper's petition. Looking to § 2255 first, we find that the identification of the hair is not a newly discovered fact. That there was some hair in the bag was known, but apparently that it was not Cooper's was also suspected, if not known, at the time of trial. The government stated in argument here that it believed that the hair was not Cooper's. The government did not attempt at trial to raise the possibility that the hair was Cooper's even though the identification of the hair as Cooper's would have been helpful evidence in tying Cooper to the travel bag. But the converse is not true; the fact that the hair is not Cooper's proves nothing. When someone is found in possession of drugs, the government is under no obligation to

show that no other person ever came in contact with those drugs. Stray hair is hardly convincing evidence. Given the other evidence, such as the testimony of witnesses who tied the bag to Cooper, the identification of the hair becomes insignificant. It follows that counsel cannot be found incompetent for failure to use the "evidence." The existence of the hair in this case, or of sophisticated methods for identifying it, is not a basis for holding that the 1–year limitation period runs from some date other than the effective date of the AEDPA.

■ That takes us to Cooper's claims that § 1651 or § 2241 allows us to reach the merits of his petition. That § 1651 saves Cooper's claim can be dispatched without ado. We rejected that statute as a substitute for § 2255 in *Davenport*. Section 2241 remains an outside possibility. In *Davenport*, which involved two defendants—Davenport and Nichols—and separate prosecutions for different offenses, we recognized that in certain situations, when relief is barred under § 2255, relief to correct "fundamental errors in the criminal process" could be sought under § 2241. Both petitioners in *Davenport* had filed § 2255 petitions, which were deemed barred under the AEDPA provision restricting most successive petitions. But the *Davenport* principles are equally applicable when the bar a petitioner faces is the 1–year limitation period. Davenport contended that his sentence was improperly enhanced because he was not an "armed career criminal" under the guidelines. Nichols claimed he was convicted for conduct that was not made criminal by the statutes under which he was prosecuted. Their arguments went "to the fundamental legality of their sentences." 147 F.3d at 609. Davenport was convicted of being a felon in possession of a firearm and his sentence was enhanced under the "armed career criminal" statute; he contended that the enhancement was based in part on a burglary conviction which was not within the scope of that statute. We concluded

that, for him, relief under § 2255 was not inadequate: he could have presented his argument in his earlier petition. Nichols, on the other hand, was convicted of the use of a firearm in the commission of a drug offense. After his first § 2255 petition was denied, the Supreme Court decided in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), that the statute under which he was convicted did not apply to mere possessors of a gun. The holding was retroactive. *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Therefore, Nichols was convicted of a nonexistent crime, which in anyone's book is a clear miscarriage of justice. Yet he did not qualify to file a successive petition under § 2255 because his petition did not meet the criteria for allowable successive petitions; that is, his claim was based on statutory construction, not newly discovered evidence nor a new rule of constitutional law. Under that circumstance, we found that Nichols was entitled to bring a motion under § 2241.

But as Davenport discovered, that one has lost the right to relief under § 2255 does not automatically mean that one gets to seek relief under § 2241. It is only when a fundamental defect exists in the criminal conviction—a defect which cannot be corrected under § 2255—that we turn to § 2241. A claim like Nichols' in *Davenport* slips through the narrow opening. A valid claim of actual innocence would be enforceable under § 2241 without regard to time limits under § 2255 if relief under that section was not, for some reason, available. But Cooper's claim simply does not present us with a fundamental defect in his conviction that would allow his stale claims to be aired.

Affirmed.