In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 05-2933 & 05-4176

BERNARD PRUITT, *et al.*,

*Plaintiffs-Appellants*,

*v.*

CITY OF CHICAGO, ILLINOIS,

*Defendant-Appellee*.

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 03 C 2877—**Samuel Der-Yeghiayan**, *Judge*.

ARGUED SEPTEMBER 8, 2006—DECIDED DECEMBER 28, 2006

Before EASTERBROOK, *Chief Judge*, and CUDAHY and MANION, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Ten of Chicago's maintenance workers at O'Hare Airport filed this suit under 42 U.S.C. §1981 plus Title VII of the Civil Rights Act of 1964. They contend that for more than 20 years Anthony Jason, a foreman, insulted and hassled black and Hispanic workers, denying them the same terms and conditions of employment that others enjoyed. They also maintain that Jason used his position to deprive them of promotions and inflict unequal discipline. The charge of discrimination was not filed until after Jason retired. The district court declined to certify plaintiffs as representatives of a class of all laborers who worked with Jason, 2004 U.S. Dist.

LEXIS 9103 (N.D. Ill. May 19, 2004), and it later dismissed the whole case as time-barred.

Plaintiffs' lead argument on appeal is that the district judge should have certified a class. Coming after the plaintiffs have lost on the merits, that's problematic. Do they want to take all other employees down in flames with them? If so—or if they just don't care about that risk—then they have demonstrated inadequacy as other workers' representatives and rendered class certification impossible. See Fed. R. Civ. P. 23(a)(4). What's more, plaintiffs do not come to grips with the ground on which the district court acted. The judge concluded that the proposed class flunked the numerosity requirement, see Rule 23(a)(1), because joinder of the fewer than 40 workers affected by Jason's excesses and desiring to participate (some maintenance workers told the court that they wanted no part of this suit) would be practical. Plaintiffs argue at length that all *other* requirements of Rule 23 have been satisfied, and maybe that's so, but if joinder would be practical then the other criteria don't matter. Sometimes "even" 40 plaintiffs would be unmanageable, but plaintiffs do not contend that this is one of those occasions. They devote only one page of their brief to Rule 23(a)(1) and do not discuss why it would be any harder to have 40 plaintiffs than to have 40 hearings (each employee's interactions with Jason, and the resulting damages if any, are person-specific) as part of one class action. So we proceed to the merits, and our decision will affect only the ten named plaintiffs.

Claims about discrete employment actions, such as failure to promote, must be made within 300 days under Title VII or four years under §1981. See *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110-15 (2002); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). That discrete acts may have been mixed with a hostile environment does not extend the time; *Morgan*, which

involved just such a mixture, shows as much. *Morgan* also tells us that a hostile environment is one wrong, and that an employee therefore may file the charge (under Title VII) or suit (under §1981) within the statutory time from the last hostile act. 536 U.S. at 115-21. In litigation that is timely under this approach, the employee may refer to hostile acts that occurred earlier, because the "entire hostile work environment encompasses a single unlawful employment practice." *Id.* at 117. Plaintiffs contend that *Morgan* makes the 20-year history of Jason's hostile behavior actionable, even if discrete acts such as discipline and lack of promotion are no longer contestable.

The Justices recognized in *Morgan* that their treatment of a hostile environment as one discriminatory employment practice had the potential to drag up ancient history, to the employer's prejudice. The Court sought to deal with this possibility by authorizing district judges to invoke the doctrine of laches. It wrote:

> This Court previously noted that despite the procedural protections of the statute "a defendant in a Title VII enforcement action might still be significantly handicapped in making his defense because of an inordinate EEOC delay in filing the action after exhausting its conciliation efforts." *Occidental Life Ins. Co. of Cal.* v. *EEOC,* 432 U.S. 355, 373 (1977). The same is true when the delay is caused by the employee, rather than by the EEOC. Cf. *Albemarle Paper Co.* v. *Moody,* 422 U.S. 405, 424 (1975) ("[A] party may not be 'entitled' to relief if its conduct of the cause has improperly and substantially prejudiced the other party"). In such cases, the federal courts have the discretionary power to "to locate 'a just result' in light of the circumstances peculiar to the case." *Id.,* at 424-425.

> In addition to other equitable defenses, therefore, an employer may raise a laches defense, which bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant. This defense "'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Kansas* v. *Colorado,* 514 U.S. 673, 687 (1995) (quoting *Costello* v. *United States,* 365 U.S. 265, 282, (1961)). We do not address questions here such as "how—and how much—prejudice must be shown" or "what consequences follow if laches is established." 2 Lindemann [& Grossman, *Employment Discrimination Law*] 1496-1500 [(3d ed. 1996)]. We observe only that employers may raise various defenses in the face of unreasonable and prejudicial delay.

536 U.S. at 121-22 (footnote omitted). The district court concluded that plaintiffs were guilty of unwarranted delay and that Chicago had been prejudiced; that's why it dismissed the suit as untimely.

Plaintiffs devote much of their brief to arguing that laches applies only to suits in equity and may not be used to shorten a statutory period of limitations. Whatever one can say for and against that proposition—which divided this court in *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078 (7th Cir. 1992); see also *Herman v. Chicago*, 870 F.2d 400 (7th Cir. 1989)—*Morgan* tells us that hostile-environment claims are exceptional. The Supreme Court treated a hostile environment as one employment practice, potentially reaching far into the past; to curtail the effect of this conclusion on the short period for filing a charge under Title VII, it also told courts to apply the doctrine of laches. Having given generously with one hand, the Court took back some with the other. Our duty is to

apply both aspects of *Morgan*, not just the plaintiff-favoring portion.

The district court found both unreasonable delay and prejudice; it is hard to fault either conclusion. If what plaintiffs say about Jason is true, they had ample basis for suit 10, 15, or 20 years ago. The situation they describe is not remotely like one that concerned the Justices in *Morgan*, in which it may be difficult to tell whether a given supervisor's misconduct is isolated as opposed to so severe or pervasive that it amounts to a hostile and discriminatory environment. There was nothing isolated, infrequent, or moderate about the statements and conduct that the plaintiffs attribute to Jason. Delay cannot be justified by a desire to find out what the workplace will be like in a few months, and to gather facts in order to avoid making baseless charges. "How much is too much" may be a difficult assessment in many cases, but if plaintiffs are telling the truth they knew by 1981 that Jason's behavior was over the line.

As for prejudice: By the time plaintiffs finally filed charges of discrimination, Jason was on leave and soon to retire. He moved outside the district court's subpoena power and has refused to return. Plaintiffs' counsel tried for months to schedule a deposition of Jason in his current home town; the efforts were unavailing. A deposition that Jason gave in another suit shows that by 2003 he had suffered a stroke and was experiencing severe memory problems; he was unable to answer most of the questions asked of him. Plaintiffs say that they complained about Jason to his supervisor, Jason Bontempo, who retired in 1998 and died in February 2003, two months before plaintiffs filed their complaint. Whatever Bontempo may have known is unavailable now. Plaintiffs also say that they complained to O'Hare's general manager for operations, Hoan Le, who retired in 1992; all of Le's records were destroyed as outdated well before plaintiffs

initiated litigation. Both sides sought the testimony of Joyce Dunlop, plaintiffs' union steward; efforts to obtain her deposition have been unsuccessful because she is suffering from cancer and other ailments. Although other maintenance employees remain available to testify (as are some supervisors), their memories of events in the 1980s and 1990s are unlikely to be reliable, and documents that would have confirmed (or refuted) plaintiffs' assertions that they complained within the bureaucracy are no longer in existence.

This is quite enough to show prejudice. An employer need not also show detrimental reliance on plaintiffs' delay—for example, that it destroyed records as a result of a belief that they would not sue. See *Smith v. Caterpillar Inc.*, 338 F.3d 730, 735 (7th Cir. 2003); cf. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir. 1999). It is hard to see how an employer can rely, detrimentally or otherwise, on delay in initiating litigation, unless the employer knows that the workers were contemplating suit. Usually employers are ignorant of the workers' plans, and employers that doubt the occurrence of discrimination would be ignorant even of a reason to suspect that the workers may or should have been planning litigation. That's why prejudice from the employees' delay, rather than prejudice from a mistaken supposition about what the employees would do, is all that's required.

There remains the final question posed by *Morgan*: "what consequences follow if laches is established"? 536 U.S. at 122. The district court assumed that the upshot of laches must be outright dismissal. Yet that's not the only possible consequence. A less severe consequence would be to carve off the aspects of the plaintiffs' claim that are no longer subject to meaningful adversarial testing. It might well be sensible to allow litigation about events back to 1999 (four years before the §1981 suit began) while foreclosing litigation about older events. That

would respect the fact that prejudice is not an all-or-none affair—evidence about what happened three or four years ago is more accessible, and memories of that time more reliable, than evidence about the events 10 or 20 years earlier.

Dismissing the whole suit because it is no longer feasible to litigate about the most ancient of the asserted wrongs could be functionally equivalent to giving the employer an easement across Title VII. By violating the statute for long enough, the employer would acquire a right to continue indefinitely. That's the upshot of Chicago's position and the district court's holding: once Jason had made plaintiffs' lives miserable for a decade or so, laches would bar all litigation no matter what Jason did in the future. That can't be right. It would be like saying that, if Jason had punched Bernard Pruitt (the lead plaintiff) in the nose every week, he could do so for the rest of Pruitt's life if two years passed without suit after the first punch. (Two years is the statute of limitations in Illinois for personal-injury suits.)

Chicago allows that this would be an unacceptable application of laches but replies that hostile-environment claims differ: each punch is a discrete wrong, while (per *Morgan*) a hostile environment is a single wrong. Application of laches to a single wrong extinguishes the right to sue. We doubt that this is what the Court meant in *Morgan* when calling a hostile environment a single employment practice. The Court's point was that Title VII addresses the terms and conditions of employment, and discrimination effected by making the workplace painful for one sex or race but pleasant for another is a single kind of injury: one sues about the disparate terms and conditions rather than about each insult, taunt, leer, or physical contact. This does not imply that, if unequal working conditions persist for years, the worker must sue for the whole course rather than some subset.

If plaintiffs could have elected to limit their own claim to events of 1999 and later, why can't a court (using the doctrine of laches) limit it for them? If, as Chicago maintains, *Morgan* really creates an all-or-none approach, why did it reserve the question what the consequences of laches would be? Consider a parallel: segregated education. That, like a discriminatory workplace, is an ongoing offense, but we held in *Palmer v. Board of Education*, 46 F.3d 682 (7th Cir. 1995), that pupils always may litigate about current conditions even if delay in filing suit has made it impossible to obtain relief for segregation during earlier years.

Although using laches to carve years out of a claim thus may be a sensible way to answer the question reserved in *Morgan*, it is not the relief that plaintiffs sought in the district court. They did not try to identify the scope of the prejudice caused by delay and specify a temporal bound that would leave the opposing sides with roughly equal access to evidence. Their appellate brief hints at such a possibility but does not undertake any of the work necessary to determine how far back the claim could reach without undue prejudice to the employer. In the district court plaintiffs' argument was limited to the proposition (one inconsistent with *Morgan*) that the claim *must* stretch at least four years back because laches never may be used to abbreviate the time allowed by a statute of limitations. The City argued that plaintiffs have forfeited the benefit of any other approach. Plaintiffs then filed a reply brief that ignored the City's argument that forfeiture has occurred. Such a head-in-the-sand position is unavailing. We hold the parties to the positions they preserved in the district court, which means that we need not attempt to draw a line between recent events (unaffected by laches) and older ones where the employer's ability to defend has been undermined.

This also means that we need not discuss Chicago's fallback argument that *Morgan*'s one-employment-practice holding is limited to Title VII (which has a short period of limitations) and does not apply under §1981. If the City is right, then an employee *never* may complain about episodes of hostile environment that occurred more than four years before the suit began. Whether that is so is a question for another day.

Plaintiffs pepper their brief with other contentions, none developed fully. For example, plaintiffs complain about seven items in the bill of costs but devote only a sentence or two to each; insufficient development forfeits all of these arguments. Appellate counsel must recognize that scattergun contentions are doomed to failure. These and all remaining arguments do not require further analysis.

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*