In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-1490

ANGEL L. MORALES,

*Petitioner-Appellant*,

*v.*

MARK A. BEZY,

*Respondent-Appellee*.

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:05-cv-1735-LJM—**Larry J. McKinney**, *Chief Judge*.

———————

ARGUED MAY 24, 2007—DECIDED AUGUST 24, 2007

———————

Before POSNER, KANNE, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*.   This appeal presents issues concerning postconviction relief. The petitioner was convicted in the federal district court for the Northern District of Indiana in 1998 on his plea of guilty to having participated in a conspiracy to launder money in an illegal gambling business. 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(h). We affirmed his conviction and his sentence of 151 months in prison in *United States v. Febus*, 218 F.3d 784, 791-95 (7th Cir. 2000). In 2005, while serving his sentence in a federal prison in the Southern District of Indiana, he filed a motion in the Northern District of Indiana under 28

U.S.C. §§ 2241 and 2255 to set aside his conviction. The motion was filed some 50 months after the conviction had become final and therefore 38 months after the expiration of the one-year statute of limitations for filing a section 2255 motion. The district court in the northern district therefore dismissed the section 2255 motion as untimely, although it did not enter the dismissal on a piece of paper separate from its opinion, as Fed. R. Civ. P. 58 requires. The court transferred the petitioner's section 2241 petition to the federal district court for the Southern District of Indiana, because such a petition must be filed in the district in which the petitioner is confined rather than in the one in which he was sentenced. *Rumsfeld v. Padilla*, 542 U.S. 426, 442-43 (2004). That court denied the petition on the ground that the petitioner had had a remedy (in the sense of a route to obtaining relief) under section 2255 in the Northern District of Indiana that was not "inadequate or ineffective to test the legality of his detention," which is a condition of a federal prisoner's being allowed to file a petition for habeas corpus under section 2241. 28 U.S.C. § 2255 ¶ 5.

The remedy created by section 2255 is a substitute for habeas corpus for federal prisoners; section 2241 backs it up. Congress may have been anxious that without such a backstop section 2255 might be thought an illicit attempt to suspend habeas corpus, *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998), though if this was its motive its anxiety was misplaced. Habeas corpus as a postconviction remedy is not the type of habeas corpus to which Article I, § 9, of the Constitution was referring when it provided that Congress can suspend the writ only in times of invasion or rebellion. *Lindh v. Murphy*, 96 F.3d 856, 867 (7th Cir. 1996) (en banc), reversed on other grounds, 521 U.S. 320 (1997);

*Benefiel v. Davis*, 403 F.3d 825, 827 (7th Cir. 2005); *Taylor v. Gilkey*, 314 F.3d 832, 834-35 (7th Cir. 2002); Henry J. Friendly, "Is Innocence Irrelevant? Collateral Attack on Criminal Convictions," 38 *U. Chi. L. Rev.* 143, 170-71 (1970). "Over the years, Congress has authorized a much broader use of habeas corpus; but curtailing an optional statutory enlargement does not violate the suspension clause. That would create an irrational ratchet. Habeas corpus could always be enlarged, but once enlarged could not be returned to its previous, less generous scope without a constitutional amendment. Once this was understood, there would be few if any further enlargements." *LaGuerre v. Reno*, 164 F.3d 1035, 1038 (7th Cir. 1998).

Habeas corpus as a procedure for postconviction relief is a different animal from habeas corpus as a remedy against executive or military detention, merely sharing a name with it. In *Felker v. Turpin,* 518 U.S. 651, 663-64 (1996), it is true, the Supreme Court assumed that the suspension clause is applicable to habeas corpus as a postconviction remedy (see also *Swain v. Pressley,* 430 U.S. 372, 381 (1977); *In re Dorsainvil*, 119 F.3d 245, 248 (3d Cir. 1997); *Triestman v. United States*, 124 F.3d 361, 370, 378 (2d Cir. 1997)), but it did not decide the question and we are confident that should it ever do so it will reject the application of the suspension clause. Otherwise Congress would have the power to entrench a habeas corpus statute against repeal; an expansion of habeas corpus could be rescinded only by amending the suspension clause, just as if the expansion had been by constitutional amendment. Since Congress cannot amend the Constitution, the ratchet would be not merely irrational but unconstitutional; it would bypass the procedure specified in Article V for amending the Constitution. That is not to say that a decision by Congress to eliminate all postconviction remedies could

not be challenged. But the proper route would be the due process clauses rather than the suspension clause, which limits a much more ominous form of congressional action than curtailing collateral attack on criminal convictions—allowing executive or military detention, bypassing all courts altogether.

The petitioner's appeal is from the judgment in the Southern District of Indiana turning down his section 2241 petition. But it asks us also to decide whether he is entitled to relief under section 2255 as well, even though the district court in the southern district did not rule on that issue. The court in the northern district had dismissed his section 2255 motion and the court in the southern district had no authority to consider it. Only the court in the district in which the movant was sentenced, here the northern district, has such authority.

The petitioner argues that to require a petitioner in a dual 2241/2255 case to appeal separately from the denial of each of the two petitions (technically, one petition and one motion) raises the hideous spectre of "piecemeal appeals." That is a frivolous argument in a case such as this in which the two petitions should have been filed in separate districts and thus ruled on separately and (if denied) given rise to separate appeals. The only reason they were conjoined was that the petitioner didn't realize that he couldn't file a habeas corpus petition in the district in which he had been sentenced because he was not confined there. His mistake does not entitle him to appeal from the dismissal more than 60 days later, Fed. R. App. P. 4(a)(1)(B)—and without his ever having filed a notice of appeal in the district court that had rendered the decision he wants to appeal. *Bowles v. Russell*, 127 S. Ct. 2360 (2007); *Varhol v. National Railroad Passenger Corp.*, 909 F.2d 1557, 1561 (7th Cir. 1990) (en banc) (per curiam).

Lest we raise false hopes, we point out that although the district court in the northern district did not enter a Rule 58 judgment order dismissing the section 2255 motion, the petitioner cannot now appeal the dismissal by filing a notice of appeal in that district court and then invoking the rule that if no Rule 58 judgment order has been entered the party can postpone appealing from a final judgment until it is entered. Fed. R. Civ. P. 58(b)(2)(A). That route is barred to our petitioner by the next subsection of Rule 58, which provides an outer limit to appeal of 150 days from when the final judgment is entered on the district court's docket. Fed. R. Civ. P. 58(b)(2)(B); see Committee Notes to 2002 Amendments to Rule 58; 15B Charles A. Wright, Arthur P. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3915, at 253 (2007). That deadline expired more than a year ago. So long a delay (two and a half years) would doubtless bar the appeal under the doctrine of laches, *Pruitt v. City of Chicago*, 472 F.3d 925, 927-28 (7th Cir. 2006); see *Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Ready Mix*, 283 F.3d 877, 880 (7th Cir. 2002); *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990), even if there were no 150-day limit.

All this is on the assumption that the dismissal of the petitioner's section 2255 motion was final despite the absence of a Rule 58 judgment order. It was. Nothing in the section 2255 proceeding remained for decision by the district court; the court was through with it, which is the meaning of finality for purposes of determining appealability. *Chase Manhattan Mortgage Corp. v. Moore*, 446 F.3d 725, 726 (7th Cir. 2006); *Moreau v. Harris County*, 158 F.3d 241, 244 (5th Cir. 1998). The fact that a *separate* action—the petition for habeas corpus under section 2241—was transferred rather than terminated is irrelevant. It is irrelevant not only because the two actions should

never have been joined, but also because relinquishing jurisdiction over a part of a case to another court (or to an agency) does not affect the finality of the dismissal of the rest of the case. An example is a case in which a district court dismisses the federal claim that conferred jurisdiction on the court but relinquishes the plaintiff's supplemental state-law claim to the state courts. *Ross ex rel. Ross v. Board of Education*, 486 F.3d 279, 281 (7th Cir. 2007); *Disher v. Information Resources, Inc.*, 873 F.2d 136, 139 (7th Cir. 1989); *Erie County Retirees Ass'n v. County of Erie,* 220 F.3d 193, 202 (3d Cir. 2000).

So the petitioner cannot challenge the denial of his section 2255 motion in this court. We therefore cannot reach the merits of his claim that the district court should have excused, under the doctrine of equitable tolling, his failure to have filed his section 2255 motion until 38 months after the deadline for filing it. *Gildon v. Bowen*, 384 F.3d 883, 886-87 (7th Cir. 2004); *Green v. United States*, 260 F.3d 78, 82 (2d Cir. 2001).

All this would be of no moment if the petitioner's section 2241 action (habeas corpus) had merit, but it does not. He cannot show that his section 2255 remedy was inadequate or ineffective. A prisoner cannot be permitted to lever his way into section 2241 by *making* his section 2255 remedy inadequate, here by failing to appeal from the denial of his section 2255 motion. *Taylor v. Gilkey, supra,* 314 F.3d at 835-36; *Cradle v. United States ex rel. Miner*, 290 F.3d 536, 538-39 (3d Cir. 2002) (per curiam); *United States v. Lurie,* 207 F.3d 1075, 1077-78 (8th Cir. 2000); see also *Garza v. Lappin*, 253 F.3d 918, 920-21 (7th Cir. 2001); *Charles v. Chandler,* 180 F.3d 753, 757-58 (6th Cir. 1999) (per curiam). What is true but irrelevant is that the ground on which the petitioner wanted to challenge his conviction—that he was

convicted under 8 U.S.C. § 1956(a)(1) of engaging in conduct, namely using *gross* receipts from a gambling enterprise to promote the enterprise, that the statute does not punish—had no case support until this court decided *United States v. Scialabba*, 282 F.3d 475 (7th Cir. 2002), shortly after the one-year deadline for the filing of the petitioner's section 2255 motion had passed. His codefendants, having filed their section 2255 motions earlier, were able to take advantage of the *Scialabba* decision. *Santos v. United States*, 461 F.3d 886 (7th Cir. 2006). But the fact that a position is novel does not allow a prisoner to bypass section 2255, with its one-year deadline, for that would blow away the deadline and leave nothing in its place, as there is no statute of limitations applicable to a federal prisoner's filing a section 2241 petition. Compare 28 U.S.C. § 2244(d)(1); *Owens v. Boyd*, 235 F.3d 356, 360 (7th Cir. 2000). Only if the position is foreclosed (as distinct from not being supported by—from being, in other words, novel) by precedent is the deadline lifted. *United States v. Prevatte*, 300 F.3d 792, 799-800 (7th Cir. 2002); *In re Davenport, supra*, 147 F.3d at 610-12.

The petitioner argues finally that *Scialabba* and *Santos* establish that he is actually innocent of the crime of which he was convicted, as distinct from his having been the victim merely of a procedural irregularity that would justify at most a new trial, *Davis v. United States*, 417 U.S. 333, 346-47 (1974); *Cooper v. United States*, 199 F.3d 898, 901 (7th Cir. 1999); *Triestman v. United States, supra*, 124 F.3d at 378-80, and that a person who is actually innocent should be allowed to file a section 2241 petition at any time, subject to the limitations in section 2244. But the petitioner's claim of innocence is premature. There is an intercircuit split, see *United States v. Grasso*, 381 F.3d 160, 166-68 (3d Cir. 2004); *United States v. Iacaboni*, 363 F.3d 1,

4 (1st Cir. 2004), to be resolved next year by the Supreme Court, see *United States v. Santos*, No. 06-1005, 127 S. Ct. 2098 (Apr. 23, 2007) (granting certiorari), over the issue that was decided in *Scialabba* and *Santos* in favor of the petitioner's position. The question of his innocence is thus in limbo. This is not to say that a determination of actual innocence can never be made until the Supreme Court has resolved the issue underlying the claim of actual innocence, for of course the Court leaves many issues to simmer at the circuit level indefinitely. But given that the issue underlying the petitioner's claim of actual innocence is before the Court, it would be paradoxical to deem him innocent by virtue of our decisions though within a year it may turn out that he is guilty by virtue of the Court's rejecting those decisions. *In re Davenport*, *supra*, 147 F.3d at 612. If the Court affirms *Santos* or somehow fails to resolve the issue, leaving our decisions intact, our petitioner can file a new section 2241 petition.

AFFIRMED.

ROVNER, *Circuit Judge*, dissenting. The court today resolves that a man who under our circuit law is innocent of the federal crime for which he has been imprisoned, should remain in prison on the chance that the Supreme Court will disagree with our understanding of the law and deem his conduct a crime. It is the antithesis of our justice system to hold that an innocent man should be imprisoned for fear that a guilty man will go free. *Schlup v.*

*Delo*, 513 U.S. 298, 325 (1995) ("Indeed, concern about the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system. That concern is reflected . . . in the 'fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free.' "). Yet that is what the court has chosen today, and I respectfully dissent.

The majority declares that the question of Morales' innocence is in limbo because there is an intercircuit split, which the Supreme Court may resolve next year in a case in which it has granted certiorari. But the definition of actual innocence cannot hinge on the status of certiorari petitions in the Supreme Court, and an intercircuit split should not preclude an actual innocence claim on the possibility that the Supreme Court in the future may hear the issue and decide differently. Until the Supreme Court tells us otherwise, our cases should control, and under our caselaw, he has a meritorious claim of actual innocence. In addition to revealing an unsettling level of insecurity about the soundness of our own decisions, the majority's reliance on the certiorari status of other cases poses all kinds of problems, including the real possibility that the Supreme Court will subsequently decide that certiorari was improvidently granted, or will otherwise fail to reach the merits when the claim is heard. Moreover, it is inconceivable that we would pursue the same path in a case with a circuit split but no similar case pending before the Supreme Court. In that case, the defendant faces the same circuit split, and there is still the possibility that within a year or less the Supreme Court would reject our cases. Yet, that defendant would be set free, and this one is not. The law should not tolerate such arbitrariness. That, of course, assumes that the majority would not require that defendant

to wait as well. It appears that whether a defendant may proceed with his claim of actual innocence or not depends on whether we think the Supreme Court will rule on a case in the future, perhaps only the near future. In any case, it allows a defendant with a claim of actual innocence to languish in prison indefinitely awaiting a Supreme Court action that might never occur.

There is simply no support in any caselaw for interjecting such a consideration into the analysis of whether a defendant may proceed on a claim of actual innocence. Until the Supreme Court actually decides an issue, we should follow our circuit's decisions concerning statutory interpretation, and under that law he has a valid claim of innocence. Moreover, this is different from *Davenport*—which is the only case cited by the majority for its novel proposition—because in this case there is no split between the circuit in which he is incarcerated and the circuit in which he was convicted. *In re Davenport*, 147 F.3d 605, 612 (7th Cir. 1998). We are both the circuit of conviction and incarceration here, so there is no concern about which law applies to the claim of actual innocence.

Recognizing that under our law, Morales has a valid claim of actual innocence may be only one of the steps. Many courts, including our own—although the courts have not always been consistent—have held that a § 2241 is available only when there is both a valid claim of actual innocence and the petitioner has not had an unobstructed opportunity to present the claim prior to this time. *Compare Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002) (holding that "§ 2255 is 'inadequate or ineffective' only when a structural problem in § 2255 forecloses even one round of effective review—and then only when the claim being foreclosed is one of actual innocence."); *Ivy v. Pontesso*,

328 F.3d 1057, 1060 (9th Cir. 2003) ("it is not enough that the petitioner is presently barred from raising his claim of innocence by motion under § 2255. He must never have had the opportunity to raise it by motion."); with *Cooper v. United States*, 199 F.3d 898, 901 (7th Cir. 1999) (noting that a conviction of a non-existent crime is "in anyone's book . . . a clear miscarriage of justice," and that "a valid claim of actual innocence would be enforceable under § 2241 without regard to time limits under § 2255 if relief under that section was not, for some reason, available."); *see also Bousley v. United States*, 523 U.S. 614, 623, 630 (1998) (procedurally defaulted claim could nevertheless be raised if petitioner could establish that the constitutional error probably resulted in the conviction of one who is actually innocent). The majority conveys the impression that if the Supreme Court upholds *Scialabba*, Morales can proceed with a new petition, but the majority fails to explain why the reasoning in this opinion in rejecting the § 2241 petition would not equally doom the later petition in establishing that he had an unobstructed opportunity to present the claim prior to this.

Although the majority does not explain that, I agree that a § 2241 petition is available because he did not have an unobstructed opportunity to present the claim prior to this time. *Scialabba* was decided after the one-year time period expired for the filing of his § 2255 petition, and for purposes of an actual innocence claim, that should be enough. *Stephens, Jr. v. Al Herrera*, 464 F.3d 895, 898 (9th Cir. 2006). We should not foreclose review of a claim of actual innocence solely because a defendant did not anticipate any novel argument that could possibly be made. *See, e.g., Bousley*, 523 U.S. at 622 (recognizing that a claim may be so novel that its legal basis is not reasonably available to

counsel). That would encourage the kind of scattershot approach to litigation that vexes the courts already. It would also mean that the creativity of a defendant's attorney, if he even has one, or the sheer luck of timing would be the definitive factor in who remains in prison for a non-existent crime and who gets out. This case illustrates it precisely, as his co-defendants had pending § 2255 petitions at the time *Scialabba* was decided, and therefore were able to successfully raise the claim in the § 2255 petition and have long been released. Instead, the question should be whether, once the claim was recognized and available in this court, the petitioner had an unobstructed opportunity to present it. He did not, and therefore should be allowed to proceed with it at this time. *See Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003) (recognizing that a defendant "must first show that the legal theory he advances relies on a change in law that postdates his first § 2255 motion . . . and 'eludes permission in section 2255 for successive motions' "); *Abdullah v. Hedrick*, 392 F.3d 957, 959 (8th Cir. 2004) (holding that Abdullah had an unobstructed opportunity to raise the claim because after the case was decided establishing his actual innocence, he failed to raise it properly in a pending § 2255 petition). As we stated in *Cooper v. United States*, 199 F.3d 898, 901 (7th Cir. 1999), a conviction of a non-existent crime is "in anyone's book . . . a clear miscarriage of justice," and as we have the authority to redress it, I see no reason why we should fail to do so at this time. Accordingly, I respectfully dissent.

No. 06-1490                                                          13

A true Copy:

  Teste:

          _____

          *Clerk of the United States Court of*
            *Appeals for the Seventh Circuit*